UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT KELLEHER, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| ADVO, INC., S. SCOTT HARDING, JEFFREY E. EPSTEIN and DONALD S. SCHNEIDER, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | September 11, 2006 DEMAND FOR JURY TRIAL |

**INTRODUCTION**

1.      This is a securities class action on behalf of all persons who purchased the common

stock of ADVO, Inc. ("ADVO" or the "Company") between July 6, 2006 and August 30, 2006 (the

"Class Period"), against ADVO and certain of its officers for violations of the Securities Exchange

Act of 1934 (the "1934 Act").

2.      ADVO is a direct mail media company that engages in soliciting and processing

printed advertising from retailers, manufacturers, and service companies in the United States and

Canada.  The Company offers direct mail marketing products and services, such as shared mail,

which provides the addresses of the households receiving the mail packages, and sorts, processes,

and transports the advertising material for ultimate delivery primarily through the United States

Postal Service ("USPS").  ADVO is headquartered in Windsor, Connecticut.

3.      During the Class Period, defendants issued materially false and misleading statements

regarding the Company's business and financial results concealing material adverse problems in

ADVO's long-term financial health and intrinsic value.  Defendants concealed this information in

order to accomplish a merger which it announced it had entered with Valassis Communications, Inc.

("Valassis"), a leading company in marketing services, to create the largest integrated media services

provider in the nation.  Valassis was acquiring all of ADVO's outstanding common stock in an all

cash transaction.  As a result of defendants' false statements, investors believed the acquisition

would occur, causing ADVO's stock to trade at artificially inflated prices during the Class Period,

reaching a high of $36.80 per share in August 2006.

4.      On July 6, 2006, the Company and Valassis issued a joint press release entitled

"Valassis to Acquire ADVO – Formation of Leading Media Services Company."  The press release

stated in part:

- Creation of diversified media services company with complementary
  products, services and clients

- All cash price of $37 per share (approximately 32 million diluted shares)

- Transaction value is approximately 8.3x fiscal year ended Sept. 30, 2006 pro-forma EBITDA, including an estimated $40 million of cost synergies

- Expected to be accretive in 2007 on a cash earnings per share (EPS) basis which excludes estimated amortization of intangibles arising from purchase accounting

- Combined offering provides advertisers with both unmatched scale and proven products; backed by a strong foundation of world-class targeting and analytics

. . . Valassis, a leading company in marketing services, announced today that it has entered into a definitive merger agreement with ADVO, the nation's leading direct mail media company, under which it will acquire all of the outstanding common shares of ADVO stock for $37 per share in cash in a merger. The fully financed transaction is valued at approximately $1.3 billion (on a diluted basis), including approximately $125 million in existing ADVO debt which Valassis expects to refinance.

This acquisition will create the nation's largest integrated media services provider. The combination will feature the most comprehensive product and customer offering in the industry serving 20,000 advertisers worldwide, including 94 of the top 100 advertisers in the United States. The combined company will be positioned to capture growth across the expanded product and service portfolio, delivering customized, targeted solutions on a national, regional, zip code, sub-zip code and household basis. ADVO's shared mail distribution business penetrates up to 114 million households, or 90% of U.S. homes, adding substantially to Valassis' weekly newspaper distribution of over 60 million households. The combined company will have 7,900 employees with operations in nine countries.

*     *     *

S. Scott Harding, ADVO Chief Executive Officer, added, "Advertisers' needs are becoming increasingly sophisticated and require solutions that are both scalable and customized. Our new company will deliver on these requirements with an unrivaled portfolio of products, leadership across multiple media platforms, proven targeting expertise and unmatched reach. In today's media world, that is an undeniably attractive combination."

Mr. Schultz continued, "We are very pleased to welcome ADVO into the Valassis family. This is an exciting opportunity for employees, clients and shareholders."

5.     On this news, ADVO's stock increased from $24.26 per share to $35.39 per share on volume of 18.6 million shares.

6.     In fact, to accomplish the merger, ADVO officers and employees concealed material information, including that:

    (a)    its business had deteriorated so badly that it would never be replaced;

    (b)    its financial internal controls were woefully inadequate; and

    (c)    its business was not as nearly successful as the market and Valassis had been led to believe.

7.     Valassis employees and agents were impeded in their efforts to perform due diligence, demonstrating defendants' active concealment of these issues.

8.     Then, on August 30, 2006, Valassis issued a press release entitled "Valassis Files Action to Rescind its Merger Agreement with ADVO; Court filing alleges misrepresentation and material adverse changes in ADVO's business."  The press release stated in part:

> Valassis Communications, Inc. today sued ADVO, Inc. in the Delaware Chancery Court to rescind its $1.3 billion merger agreement with ADVO based on fraud and material adverse changes, alleging that ADVO management materially misrepresented the financial health of the company and failed to reveal internal control deficiencies.
>
> According to the complaint, ADVO intentionally provided Valassis with "materially false financial information" and "withheld material information" at a time when the operating income was materially off forecast. The complaint also alleges that ADVO executives knew of, but did not disclose, significant internal control deficiencies associated with ADVO's enterprise-wide order-to-cash system.
>
> "We believe that taking this action is in the best interest of our shareholders," said Alan F. Schultz, Valassis Chairman, President and CEO. "ADVO left us with no choice. The pertinent information we received was erroneous, projections were grossly inaccurate and we believe we were the victims of fraud."

9.     As a result of defendants' false statements, ADVO's stock traded at inflated levels during the Class Period.  However, after the above revelations, the Company's shares were hammered by massive sales, sending them down 22% from their high to $28.59 per share.

## JURISDICTION AND VENUE

10.    Jurisdiction is conferred by §27 of the 1934 Act.  The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5.

11.    (a)    Venue is proper in this District pursuant to §27 of the 1934 Act.  Many of the false and misleading statements were made in or issued from this District.

(b)    The Company's principal executive offices are located at One Targeting Centre, Windsor, Connecticut.

## THE PARTIES

12.    Plaintiff Robert Kelleher purchased ADVO common stock as described in the attached certification and was damaged thereby.

13.    Defendant ADVO is a direct mail media company, which engages in soliciting and processing printed advertising from retailers, manufacturers, and service companies in the United States and Canada.  The Company offers direct mail marketing products and services, such as shared mail, which provides the addresses of the households receiving the mail packages, and sorts, processes, and transports the advertising material for ultimate delivery primarily through the USPS. The Company also offers solo mail services, which includes list procurement, addressing, processing, and distribution of brochures and circulars for an individual customer through USPS.

14.    Defendant S. Scott Harding ("Harding") is, and at all relevant times was, the CEO and a director of ADVO.

15.    Defendant Jeffrey E. Epstein ("Epstein") is, and at all relevant times was, Executive Vice President and Chief Financial Officer ("CFO") of ADVO.

16.    Defendant Donald S. Schneider ("Schneider") is, and at all relevant times was, an Executive Vice President of ADVO.

17.    Defendants Harding, Epstein and Schneider, because of their positions with the Company, possessed the power and authority to control the contents of ADVO's quarterly reports,

- 4 -

press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions as CEO and director, Executive Vice President and CFO, and Executive Vice President, and their access to material non-public information available to them but not to the public, Harding, Epstein and Schneider knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. Harding, Epstein and Schneider are liable for the false statements pleaded herein at ¶¶20-23.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

18.     Defendants are liable for: (i) making false statements; *or* (ii) failing to disclose adverse facts known to them about ADVO. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of ADVO common stock was a success, as it: (i) deceived the investing public regarding ADVO's prospects and business; (ii) artificially inflated the price of ADVO's common stock; (iii) allowed defendants to enter into an agreement to be acquired by Valassis in an all-cash deal; and (iv) caused plaintiff and other members of the Class to purchase ADVO common stock at inflated prices.

## BACKGROUND

19.     In early July 2006, ADVO commenced discussions pursuant to a merger agreement among the Company and Valassis to create the largest integrated media services provider in the nation.

## DEFENDANTS' FALSE AND MISLEADING
## STATEMENTS ISSUED DURING THE CLASS PERIOD

20.     On July 6, 2006, the Company and Valassis issued a joint press release entitled

"Valassis to Acquire ADVO – Formation of Leading Media Services Company." The press release

stated in part:

- Creation of diversified media services company with complementary products, services and clients

- All cash price of $37 per share (approximately 32 million diluted shares)

- Transaction value is approximately 8.3x fiscal year ended Sept. 30, 2006 pro-forma EBITDA, including an estimated $40 million of cost synergies

- Expected to be accretive in 2007 on a cash earnings per share (EPS) basis which excludes estimated amortization of intangibles arising from purchase accounting

- Combined offering provides advertisers with both unmatched scale and proven products; backed by a strong foundation of world-class targeting and analytics

. . . Valassis, a leading company in marketing services, announced today that it has entered into a definitive merger agreement with ADVO, the nation's leading direct mail media company, under which it will acquire all of the outstanding common shares of ADVO stock for $37 per share in cash in a merger. The fully financed transaction is valued at approximately $1.3 billion (on a diluted basis), including approximately $125 million in existing ADVO debt which Valassis expects to refinance.

This acquisition will create the nation's largest integrated media services provider. The combination will feature the most comprehensive product and customer offering in the industry serving 20,000 advertisers worldwide, including 94 of the top 100 advertisers in the United States. The combined company will be positioned to capture growth across the expanded product and service portfolio, delivering customized, targeted solutions on a national, regional, zip code, sub-zip code and household basis. ADVO's shared mail distribution business penetrates up to 114 million households, or 90% of U.S. homes, adding substantially to Valassis' weekly newspaper distribution of over 60 million households. The combined company will have 7,900 employees with operations in nine countries.

"Together, Valassis and ADVO will be well positioned for growth as a more diversified company with complementary capabilities, product offerings and clients," said Alan F. Schultz, Valassis Chairman, President and CEO. "We will have an unsurpassed ability to deliver value and savings to consumers where, when and how they want – and to do so with advanced analytics and targeting capabilities that maximize advertisers' return on investment. This combination is a first in the media

services industry and uniquely positions us to capture growth by anticipating the needs of the marketplace and evolving to meet them."

S. Scott Harding, ADVO Chief Executive Officer, added, "Advertisers' needs are becoming increasingly sophisticated and require solutions that are both scalable and customized. Our new company will deliver on these requirements with an unrivaled portfolio of products, leadership across multiple media platforms, proven targeting expertise and unmatched reach. In today's media world, that is an undeniably attractive combination."

Mr. Schultz continued, "We are very pleased to welcome ADVO into the Valassis family. This is an exciting opportunity for employees, clients and shareholders."

21.    On August 2, 2006, the Company issued a press release entitled "ADVO Reports Third Quarter Results." The Company filed a subsequent Form 8-K with the Securities and Exchange Commission ("SEC"). The press release stated in part:

ADVO, Inc. today reported that revenue for its third fiscal quarter ended July 1, 2006 was $386.8 million versus $353.6 million in the prior year quarter, and operating income was $12.7 million versus $22.4 million in the prior year quarter. Diluted E.P.S. was $0.22 versus $0.41 in the prior year quarter. The third fiscal quarter of 2006 contained a planned extra week versus the prior year period due to the Company's 52/53 week fiscal year.

Both this year's third quarter and the prior year's third quarter contained certain non-recurring costs. Included in the third fiscal quarter of 2006 was a charge of $0.03 in E.P.S. related to the previously announced closure of its Memphis production facility, the new newspaper agreement in Southern California, and the outsourcing of its graphics print services. The Company also incurred expenses of approximately $0.05 in E.P.S. related to its anticipated merger with Valassis. In addition to these non-recurring costs, the Company incurred additional expenses of $0.03 in E.P.S. year-over-year related to the adoption of FAS123(R). The prior year period E.P.S. included a charge of $0.07 per share related to an organizational realignment. . . .

Third quarter fiscal 2006 distribution expense and print and paper expense as a percent of revenue increased 3.2 percentage points and 0.3 percentage points, respectively. All other costs of sales netted no change as a percent of revenue, resulting in a gross margin decrease of 3.5 percentage points of revenue. SG&A for the third quarter increased $4.4 million, or 6.8%, which was a 0.4 percentage point improvement as a percent of revenue. Third quarter fiscal 2006 operating income as a percent of revenue declined 3.1 percentage points versus the prior year period. The Company's margins were negatively impacted by costs associated with the transition to the new order entry system during the quarter, which the Company estimates to be in the range of $0.06-$0.09 in E.P.S.

The Company's shared advertising packages grew 8.9% to 1.1 billion (up 2.7% after adjusting the fiscal calendar to the comparable prior year period). Pieces per package were 8.4, down 0.2%. Total shared advertising piece volumes grew 8.6% to 9.5 billion (up 3.1% after adjusting the fiscal calendar to the comparable prior year period). Revenue per piece declined 1.9% driven by declines in ShopWise(R) Wrap revenue and lighter grocery circulars. Total zone products (ShopWise(R) Wrap and Missing Child Card) revenue declined $5 million year-over-year after adjusting the fiscal calendar to the comparable prior year period, an improvement versus the $7 million year-over-year decline in the second fiscal quarter.

Scott Harding, ADVO's Chief Executive Officer stated, "We have successfully converted to our new order entry system during the quarter. This is an accomplishment that has been four years in the making. I am proud of the tremendous efforts given by ADVO associates across the organization to overcome the normal challenges associated with the implementation of an enterprise wide system and successfully go live. As we put this system transition behind us, we are confident in our ability to gain focus and momentum in our core business operations as we close fiscal 2006 and move into fiscal 2007."

Mr. Harding went on to state, "We are working closely with Valassis to develop and, after closing, execute a successful integration of the two companies. This merger will create a diversified company, combining complementary capabilities, product and service offerings and clients. The combined Company will be well positioned for future growth with an expanded product portfolio which can serve the diverse media needs in today's marketplace. We are excited about the opportunities this will bring for employees, shareholders and clients as we create the nation's largest integrated media solutions provider."

22.     On August 10, 2006, the Company filed its Form 10-Q for period ended July 1, 2006, discussing its Service Delivery Redesign project, stating in part:

In April 2006, the Company launched its new order delivery system, known as the Service Delivery Redesign project ("SDR"), upgrading current software applications, employing new technology and work processes to speed information flow and integrating business processes throughout the organization. The SDR implementation affected either directly or peripherally virtually all functions in the Company, requiring a significant effort by all associates. Associates' regular day-to-day activities were replaced by "skill learning" activities to become familiar with the new system and at the same time to gain knowledge of new business processes. SDR directly impacted the following functions: contracting, order management, graphics print, operations, sales, accounts receivable, billing, collections, finance, and information technology.

The Company encountered transitional issues during the SDR implementation. Problems with entering and processing customer orders, temporary inefficiencies in production, shipping disruptions and delayed customer invoicing were experienced. These type of issues are expected with the launch of new systems.

As a result, the Company incurred delayed collection of accounts receivable and additional costs that contributed to the lower profit margins realized in the third quarter of fiscal 2006. The Company believes it has identified and corrected many of the issues associated with the SDR implementation during of [sic] the third quarter.

23. On August 16, 2006, the Company and Valassis issued a joint press release entitled "Valassis' Proposed Acquisition of ADVO Receives Regulatory Clearance." The press release stated in part:

> Valassis, the leading company in marketing services and Connective Media, and ADVO, the nation's leading direct mail media company, announced today that the Federal Trade Commission has granted early termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, with respect to the previously announced agreement to acquire ADVO by Valassis. The consummation of the acquisition is subject to approval by ADVO's shareholders and other customary closing conditions.

24. On August 30, 2006, ADVO's stock closed at $36.80 per share.

25. Then, on August 30, 2006, after the close, Valassis issued a press release entitled "Valassis Files Action to Rescind its Merger Agreement with ADVO; Court filing alleges misrepresentation and material adverse changes in ADVO's business." The press release stated in part:

> Valassis Communications, Inc. today sued ADVO, Inc. in the Delaware Chancery Court to rescind its $1.3 billion merger agreement with ADVO based on fraud and material adverse changes, alleging that ADVO management materially misrepresented the financial health of the company and failed to reveal internal control deficiencies.
>
> According to the complaint, ADVO intentionally provided Valassis with "materially false financial information" and "withheld material information" at a time when the operating income was materially off forecast. The complaint also alleges that ADVO executives knew of, but did not disclose, significant internal control deficiencies associated with ADVO's enterprise-wide order-to-cash system.
>
> "We believe that taking this action is in the best interest of our shareholders," said Alan F. Schultz, Valassis Chairman, President and CEO. "ADVO left us with no choice. The pertinent information we received was erroneous, projections were grossly inaccurate and we believe we were the victims of fraud."

26. On this news, ADVO's stock collapsed to as low as $25.92 per share, before closing at $28.59 per share on volume of 11.1 million shares, 11 times the average volume.

- 9 -

27.     As a result of defendants' false statements, ADVO's stock traded at inflated levels during the Class Period.   However, after the above revelations, the Company's shares were hammered by massive sales, sending them down 22% from their high.

## LOSS CAUSATION/ECONOMIC LOSS

28.     By misrepresenting its business, the defendants presented a misleading picture of ADVO's prospects.   Thus, instead of truthfully disclosing during the Class Period that ADVO's business was not as healthy as represented, ADVO falsely misrepresented its business in order to complete a merger with Valassis.

29.     These claims caused and maintained the artificial inflation in ADVO's stock price throughout the Class Period and until the truth was revealed to the market.

30.     Defendants' false and misleading statements had the intended effect and caused ADVO stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $36.80 per share.

31.     On August 30, 2006, Valassis announced its lawsuit alleging ADVO's concealment of its very poor business results.

32.     As a direct result of the public revelations regarding the truth about ADVO's overstatement of income and its actual business prospects going forward, ADVO's stock price plummeted 22%, closing at $28.59 per share on August 30, 2006, a drop of $8.21 per share.   This drop removed the inflation from ADVO's stock price, causing real economic loss to investors who had purchased the stock during the Class Period.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

33.     Plaintiff incorporates ¶¶1-32 by reference.

34.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

35.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     employed devices, schemes and artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of ADVO common stock during the Class Period.

36.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for ADVO common stock.  Plaintiff and the Class would not have purchased ADVO common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

37.     As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of ADVO common stock during the Class Period.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

38.     Plaintiff incorporates ¶¶1-37 by reference.

39.     Defendants Harding, Epstein and Schneider acted as controlling persons of ADVO within the meaning of §20(a) of the 1934 Act.  By reason of their positions as CEO and director, Executive Vice President and CFO, and Executive Vice President of ADVO, and their ownership of ADVO stock, Harding, Epstein and Schneider had the power and authority to cause ADVO to engage in the wrongful conduct complained of herein.  ADVO controlled Harding, Epstein and Schneider and all of its employees.  By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased ADVO common stock on the open market during the Class Period (the "Class").  Excluded from the Class are defendants.

41.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  ADVO has more than 31 million shares of stock outstanding, owned by hundreds if not thousands of persons.

42.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     whether the 1934 Act was violated by defendants;

(b)     whether defendants omitted and/or misrepresented material facts;

(c)     whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether defendants knew or deliberately disregarded that their statements were false and misleading;

(e)     whether the price of ADVO's common stock was artificially inflated; and

(f)     the extent of damage sustained by Class members and the appropriate measure of damages.

43.     Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

44.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

45.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.     Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

B.     Awarding plaintiff and the members of the Class damages, interest and costs;

C.     Awarding plaintiff reasonable costs and attorneys' fees; and

D.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

By: _Nancy A. Kulesa_

Andrew M. Schatz (ct 00603)
Jeffrey S. Nobel (ct 04855)
Nancy A. Kulesa (ct 25384)
SCHATZ & NOBEL P.C.
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06103
Tel.: 860-493-6292
Fax: 860-493-6290


LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

S:\CptDraft\Securities\Cpt ADVO.doc

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

ROBERT KELLEHER ("Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

**Acquisitions:**

| Date Acquired | Number of Shares Acquired. | Acquisition Price Per Share |
|---|---|---|
| 7/24/06 | 400 | 35.92 |
| 7/24/06 | 162 | 35.90 |
| | | |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| | 0 | |
| | 0 | |
| | | |

5.    Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

6.    The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _8th_ day of _Sept._, 2006.

_Robert B. Kelleher_

ROBERT KELLEHER

ADVO