UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT KELLEHER, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 3:06-cv-01422-AVC **(Consolidated)** |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | LEAD PLAINTIFF'S MEMORANDUM OF |
| ADVO, INC., et al., | ) ) ) | LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND |
| Defendants. | ) ) ) | PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS |

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ....................................................................1

II.  HISTORY AND BACKGROUND OF THE ACTION ....................................................4

III.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
ADEQUATE AND SHOULD BE APPROVED BY THE COURT ..................................4

    A.  The Law Favors and Encourages Settlements ........................................................4

    B.  The Settlement Is Procedurally Fair ....................................................................5

    C.  The Second Circuit's Standards Governing the Substantive Fairness of
Class Action Settlements ....................................................................7

    D.  The Settlement Satisfies the Second Circuit Criteria for Approval ........................8

        1.  The Complexity, Expense, and Likely Duration of the Litigation
Justifies the Settlement ....................................................................8

        2.  The Reaction of the Class to the Settlement ................................................9

        3.  The Stage of the Proceedings and Discovery Completed..........................10

        4.  The Risk of Establishing Liability ............................................................11

            a.  Defenses to Loss Causation ........................................................12

            b.  Defenses to Scienter................................................................13

            c.  Defenses to Falsity and Materiality ................................................14

        5.  The Considerable Risk of Establishing Damages......................................14

        6.  The Risks of Maintaining the Class Action Through Trial........................16

        7.  The Reasonableness of the Settlement in Light of the Best Possible
Recovery and the Attendant Risks of Litigation........................................16

        8.  The Ability of the Defendants to Withstand a Greater Judgment..............17

IV.  THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND IS FAIR AND
REASONABLE AND SHOULD BE APPROVED BY THE COURT ............................18

V.  CONCLUSION........................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Beecher v. Able*,
575 F.2d 1010 (2d Cir. 1978)..........................................................................18

*Berger v. Compaq Computer Corp.*,
257 F.3d 475 (5th Cir. 2001) ..........................................................................16

*Carpe v. Aquila, Inc.*,
No. 02-0388-CV-W-FJG, slip op.
(W.D. Mo. Mar. 23, 2005)..............................................................................15

*Chatelain v. Prudential-Bache Sec.*,
805 F. Supp. 209 (S.D.N.Y. 1992) .................................................................16

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)...........................................................................6, 10

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)................................................................... *passim*

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).......................................................................................12

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976).......................................................................................12

*Heyer v. N.Y. City Hous. Auth.*,
No. 80 Civ. 1196 (RWS), 2006 U.S. Dist. LEXIS 25089
(S.D.N.Y. Apr. 28, 2006)................................................................................11

*Hicks v. Morgan Stanley & Co.*,
No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
(S.D.N.Y. Oct. 24, 2005) .................................................................................9

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984),
*aff'd*, 818 F.2d 145 (2d Cir. 1987)...............................................................16

*In re Alloy, Inc., Sec. Litig.*,
No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129
(S.D.N.Y. Dec. 2, 2004)....................................................................................5

*In re Am. Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................................11, 18

- ii -

**Page**

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
No. MDL 1500, 2006 U.S. Dist. LEXIS 17588
(S.D.N.Y. Apr. 6, 2006)......................................................................................12

*In re Ashanti Goldfields Sec. Litig.*,
No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431
(E.D.N.Y. Nov. 15, 2005)....................................................................................4

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)............................................................10, 11

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)................................................................................16

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................7, 10, 19

*In re Holocaust Victim Assets Litig.*,
413 F.3d 183 (2d Cir. 2001)................................................................................19

*In re Host Am. Corp. Sec. Litig.*,
No. 3:05-cv-01250 (VLB), 2008 U.S. Dist. LEXIS 17405
(D. Conn. Mar. 7, 2008)......................................................................................9

*In re Indep. Energy Holdings PLC Sec. Litig.*,
No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090
(S.D.N.Y. Sept. 29, 2003)............................................................................14, 17

*In re Luxottica Group S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) ...................................................................5, 7, 9

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 93423
(S.D.N.Y. Dec. 20, 2007)....................................................................................7

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) ........................................................................4

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 46 (S.D.N.Y. 1993) ..........................................................................11

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y.),
*aff'd*, 117 F.3d 721 (2d Cir. 1997)............................................................ *passim*

- iii -

Page

*In re Priceline.com, Inc. Sec. Litig.*,
No. 3:00-CV-1884(AVC), 2007 U.S. Dist. LEXIS 52538
(D. Conn. July 20, 2007) ......................................................6, 18, 19

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093
(S.D.N.Y. May 1, 2008) ........................................................8, 10, 18

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629
(S.D.N.Y. Nov. 7, 2007) ............................................................ *passim*

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ..................................................10, 18

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985),
*aff'd*, 798 F.2d 35 (2d Cir. 1986) ..................................................15

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..........................................18

*Joel A. v. Giuliani*,
218 F.3d 132 (2d Cir. 2000) ........................................................4

*Kaufman v. Motorola, Inc.*,
No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627
(N.D. Ill. Sept. 21, 2000) ..............................................................15

*Lewis v. Newman*,
59 F.R.D. 525 (S.D.N.Y. 1973) ....................................................12

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................17, 18, 19

*Milstein v. Huck*,
600 F. Supp. 254 (E.D.N.Y. 1984) ..................................................8

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ....................................................5, 17

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) ........................................................12

- iv -

**Page**

*Plummer v. Chem. Bank*,
    668 F.2d 654 (2d Cir. 1982).................................................................................10

*Prasker v. Asia Five Eight LLC*,
    No. 08 Civ. 5811 (MGC), 2010 U.S. Dist. LEXIS 1445
    (S.D.N.Y. Jan. 6, 2010)..................................................................... *passim*

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)..............................................................8

*Taft v. Ackermans*,
    No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144
    (S.D.N.Y. Jan. 31, 2007)..................................................................................4

*Teachers' Ret. Sys. of La. v. A.C.L.N.*,
    No. 01-CV-11814 (MP), 2004 WL 1087261
    (S.D.N.Y. May 14, 2004)...............................................................................11

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)...................................................................4, 17, 18

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)...........................................................................4, 5

*Whalen v. Hibernia Foods PLC*,
    No. 04 Civ. 3182, 2005 U.S. Dist. LEXIS 15489
    (S.D.N.Y. Aug. 1, 2005) ...............................................................................12

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008)..............................................................4

*Zerkle v. Cleveland-Cliffs Iron Co.*,
    52 F.R.D. 151 (S.D.N.Y. 1971) .....................................................................12

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23(b)(3).....................................................................................................1
    Rule 23(e)......................................................................................................1, 4
    Rule 23(e)(2)......................................................................................................7

Page

**SECONDARY AUTHORITIES**

4 Alba Conte, Herbert B. Newberg,
*Newberg on Class Actions*  (4th ed. 2002)
    §11.45.................................................................................................................................10

Brian Saxton, Svetlana Starykh,
*Recent Trends in Shareholder Class Actions:  Filings Return to*
*2005 Levels as Subprime Cases Take Off; Average Settlements Hit New High*
    (NERA 2007)..................................................................................................................17

Ellen M. Ryan, Laura E. Simmons,
*Securities Class Action Settlements, 2008 Review and Analysis*
    (Cornerstone Research 2009)..........................................................................................17

Pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure, Lead Plaintiff Robert Kelleher, by and through his counsel ("Lead Counsel"), respectfully moves this Court for an order approving the proposed settlement of the above-captioned class action (the "Action") and approving the proposed Plan of Allocation of settlement proceeds, each of which this Court preliminarily approved by its Order dated December 8, 2009 (the "Preliminary Approval Order").[1]

## I.    PRELIMINARY STATEMENT

Under the terms of the proposed settlement (the "Settlement"), as set forth in the Stipulation of Settlement dated October 28, 2009 (the "Stipulation"), the Defendants have caused to be paid Twelve Million Five Hundred Thousand Dollars ($12,500,000) in cash (the "Settlement Amount") into an interest-bearing escrow account on behalf of the Class, in exchange for the dismissal of all claims brought against the Defendants in this Action and a full release of claims.[2]  The Settlement Fund (the Settlement Amount plus all interest earned thereon) will be used for the payment of taxes, notice and administrative costs, and for attorneys' fees and expenses.  The remainder after these expenditures, the "Net Settlement Fund," will be distributed to Class Members who are not otherwise excluded and who timely submit valid Proof of Claim and Release forms to the Claims Administrator ("Authorized Claimants").  Each Authorized Claimant shall be allocated a percentage of the Net Settlement Fund based upon the relationship that each Authorized Claimant's claim bears to the total of all Authorized Claimants' claims, as explained in the Notice of Pendency and Proposed Settlement of Class Action (the "Notice").

---

[1]    Mr. Kelleher passed away on November 8, 2009.  Therefore, his estate is continuing as Lead Plaintiff.  Mr. Kelleher provided his approval of this proposed settlement prior to his death.  *See* ¶ 11 of the Declaration of Spencer A. Burkholz in Support of Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds, and Award of Attorneys' Fees and Expenses ("Burkholz Decl."), submitted herewith.

[2]    All capitalized terms not defined herein have the same meanings set forth in the Stipulation.

- 1 -

Lead Counsel respectfully submit that this Settlement is an excellent recovery for the Class, given the serious obstacles to recovery at trial. This Settlement was reached by Lead Counsel, with the support of the Lead Plaintiff, as a result of their creative and aggressive litigation efforts. When viewed in light of the risks that Defendants could prevail at summary judgment or at trial, based on their defenses to, among other things, loss causation, falsity, scienter, and damages, the Settlement is a substantial result for the Class. The Settlement also saves the Class the considerable expense and delay posed by continued litigation, especially here, where much of the documentary evidence consists of complex technical and accounting documents. As fully discussed below and in the Burkholz Declaration, the significant risks involved in taking this Action further in litigation, and possibly on to trial, when measured against the benefit of the Settlement, support approval of this Settlement.

On December 8, 2009, the Court entered its Preliminary Approval Order, which directed that a hearing be held to determine the fairness, reasonableness, and adequacy of the Settlement (the "Settlement Hearing"). Pursuant to the Preliminary Approval Order, the Notice was mailed to over 8,700 potential Class Members commencing on December 17, 2009.[3] The Summary Notice was also published in the national edition of *Investor's Business Daily* and over the *BusinessWire* on December 18, 2009. *See* Sylvester Decl., ¶12. Gilardi & Co. LLC, the Court-appointed Claims Administrator, also established a toll-free number to accommodate potential Class Members' inquiries (Sylvester Decl., ¶10), and posted copies of the Notice, Proof of Claim, and the Preliminary Approval Order on its website on December 17, 2009. *Id.*, ¶11.

---

[3]    *See* ¶¶3-9 of the Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Pendency and Proposed Settlement of Class Action and the Proof of Claim and Release Form, and B) Publication of the Summary Notice ("Sylvester Decl."), which is submitted herewith.

The Notice contains a detailed description of the nature and procedural history of the Action, as well as the material terms of the Settlement, including: (i) Lead Plaintiff's estimate of the average per share recovery; (ii) the manner in which the Net Settlement Fund (as defined above) will be allocated among participating Class Members; (iii) a description of the claims that will be released in the Settlement; (iv) the right and mechanism for Class Members to opt-out or exclude themselves from the Class; and (v) the right and mechanism for Class Members to object to the Settlement.

The reaction of Class Members to the Settlement confirms Lead Plaintiff's decision to resolve the Action against the Defendants in exchange for the payment of the Settlement Amount. As of the date preceding the filing of this Memorandum, which is before the deadline for the submission of objections or requests for exclusion, no objections have been filed to the Settlement or the Plan of Allocation. Nor have any Class Members submitted requests for exclusion from the proposed Settlement. Therefore, the reaction of the Class strongly supports the inference that the Class agrees that the Settlement and Plan of Allocation are fair, reasonable, and adequate.[4]

In light of Lead Counsel's informed assessment of the strengths and weaknesses of the claims and defenses asserted, the absence of opposition to the Settlement, and the considerable risks and delays associated with continued litigation and trial, Lead Plaintiff and Lead Counsel believe that the Settlement is eminently fair, reasonable, and adequate and provides a substantial result for the Class. Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of this Settlement. Additionally, the Plan of Allocation, which was developed with the assistance of Lead Plaintiff's damages consultant, is a fair and reasonable method for distributing the Net Settlement Fund to Class Members, and should also be approved by the Court.

---

[4] If any timely objections are received, they will be addressed in a reply memorandum, which will be filed and served by February 24, 2010.

## II.     HISTORY AND BACKGROUND OF THE ACTION

The Court is respectfully referred to the accompanying Burkholz Declaration for a full discussion of, *inter alia*, the factual background and procedural history of the Action, the extensive litigation efforts of Lead Counsel, the significant risks of continued litigation, and a discussion of the negotiations leading to this Settlement.

## III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A.      The Law Favors and Encourages Settlements

Rule 23(e) requires that the settlement of a class action be approved by the court.  A court may approve a settlement that is binding on the class only if it determines that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).  This evaluation requires the court to consider "both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 165 (S.D.N.Y. 2007).  While the decision to grant or deny approval of a settlement lies within the broad discretion of the trial court, a general policy favoring settlement exists, especially with respect to class actions. *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811 (MGC), 2010 U.S. Dist. LEXIS 1445, at *9 (S.D.N.Y. Jan. 6, 2010); *Wright*, 553 F. Supp. 2d at 344; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629, at *16 (S.D.N.Y. Nov. 7, 2007); *In re Ashanti Goldfields Sec. Litig.*, No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431, at *3-*4 (E.D.N.Y. Nov. 15, 2005); *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *13-*14 (S.D.N.Y. Jan. 31, 2007). *See also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (The settlement of complex class action litigations are clearly favored by the courts.).  Moreover, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome,

- 4 -

and the typical length of the litigation." *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Weinberger*, 698 F.2d at 73 ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.").

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974); *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *17. As stated by the court in *Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972),

> the role of a court in passing upon the propriety of the settlement of a derivative or other class action is a delicate one. . . . [W]e recognized that since "'the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation', the court must not turn the settlement hearing 'into a trial or a rehearsal of the trial'."

*Id.* at 691-92 (citation omitted). "'Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'" *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *9 (citation omitted).

**B.     The Settlement Is Procedurally Fair**

A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations after meaningful discovery, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *Luxottica Group*, 233 F.R.D. at 315; *see also In re Alloy, Inc., Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129, at *5 (S.D.N.Y. Dec. 2, 2004). A court may find the negotiating process is fair where, as here, "the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability . . . necessary to

effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

This initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after vigorous arm's-length negotiations with the assistance of the Honorable Layn R. Phillips (Ret.), a former federal district judge and experienced mediator of complex litigation. Burkholz Decl., ¶¶73-74.[5] "Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process." *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *10. *See also In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-CV-1884(AVC), 2007 U.S. Dist. LEXIS 52538, at *8 (D. Conn. July 20, 2007). In addition, no question exists that Lead Counsel – equipped with knowledge from an extensive investigation and evaluation of Lead Plaintiff's claims – were fully informed of the merits and weaknesses of the case by the time the Settlement was consummated. As set out in the Burkholz Declaration, Lead Counsel reviewed over 2.5 million pages of documents produced by the Defendants and non-parties, reviewed and analyzed tens of thousands of pages of deposition and trial testimony and exhibits from prior litigation between ADVO and Valassis, and conducted eight depositions of percipient witnesses, and that of Defendants' expert on class certification. Further, Lead Plaintiff obtained class certification over Defendants' vigorous opposition, and retained an economics and loss causation expert to assist with an evaluation of the case. Lead Counsel also defended Lead Plaintiff's and its expert's depositions. All of these considerations confirmed the

---

[5] The parties attended a mediation in early 2009 before the Honorable Eugene F. Lynch (Ret.), but that mediation failed, and litigation continued. Burkholz Decl., ¶71.

- 6 -

reasonableness of the Settlement.  Thus, little doubt exists that this Settlement is entitled to the

presumption of procedural fairness dictated by Second Circuit law.

### C.    The Second Circuit's Standards Governing the Substantive Fairness of Class Action Settlements

As stated above, courts within the Second Circuit observe the universal standard for

determining whether a proposed class settlement is substantively fair: whether the proposed

settlement is "'fair, reasonable, and adequate.'"  *Luxottica Group*, 233 F.R.D. at 310 (citation

omitted); Fed. R. Civ. P. 23(e)(2).  The Second Circuit has identified nine factors that courts should

consider in deciding whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of
> the class to the settlement, (3) the stage of the proceedings and the amount of
> discovery completed, (4) the risks of establishing liability, (5) the risks of
> establishing damages, (6) the risks of maintaining the class action through the trial,
> (7) the ability of the defendants to withstand a greater judgment, (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery, [and] (9)
> the range of reasonableness of the settlement fund to a possible recovery in light of
> all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted).  All nine factors need not be satisfied.  Instead, the

court should look at the totality of these factors in light of the specific circumstances involved.  *In re*

*Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist.

LEXIS 93423, at *25-*26 (S.D.N.Y. Dec. 20, 2007); *In re Global Crossing Sec. & ERISA Litig.*, 225

F.R.D. 436, 456 (S.D.N.Y. 2004).

As demonstrated below, the Settlement satisfies each of the relevant criteria set forth above.

Indeed, this Settlement represents an excellent recovery for the Class, and, in the judgment of Lead

Counsel, there is serious doubt that a more favorable result was possible.  As such, the Settlement

clearly warrants this Court's final approval.

D.      **The Settlement Satisfies the Second Circuit Criteria for Approval**

1.      **The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement**

"The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("'[I]t is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members.'") (citation omitted). Here, the securities claims advanced by Lead Plaintiff involve numerous complex legal and factual issues relating to the true status of ADVO's business and financial performance during merger negotiations with Valassis. More specifically, Lead Plaintiff alleged that during the Class Period, Defendants deceived the investing public and Valassis concerning the Company's financial results and the success of its Service Delivery Redesign Operating System. The legal issues in this Action are equally as complex – proving falsity, materiality, scienter, causation, and damages – and would also require expert testimony from both sides. Though much discovery has been completed, the expense and time for expert discovery and trial preparation lay ahead, and there was no guarantee that incurring additional time and expenses would have resulted in a better result.

There can be no doubt that because this Action is settling against the Defendants at this time, the litigants have been spared the delay and expense of continued litigation. Many hours of the Court's time and resources have also been spared. Even if the Class could recover a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class any recovery for years, further reducing its value. *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093, at *18 (S.D.N.Y. May 1, 2008) ("*Sony*"); *Strougo*, 258 F. Supp. 2d at 261 ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . .

- 8 -

the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *16 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

The Settlement for $12.5 million in cash at this juncture results in an immediate and substantial tangible recovery without the considerable risk, expense, and delay of expert discovery, summary judgment, and trial. Lead Counsel submit that the Court should find that this factor weighs heavily in favor of the proposed Settlement.

### 2.    The Reaction of the Class to the Settlement

The reaction of the Class to the Settlement is a significant factor in assessing its fairness and adequacy, and "'the absence of objectors may itself be taken as evidencing the fairness of a settlement.'" *PaineWebber*, 171 F.R.D. at 126 (citation omitted); *see also Luxottica Group*, 233 F.R.D. at 311-12. "'The fact that the vast majority of class members neither objected nor opted out is a strong indication' of fairness." *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *12 (citation omitted). At least one court in this District has noted that the reaction of the class to a settlement is perhaps the most significant factor to be weighed in considering its adequacy. *See In re Host Am. Corp. Sec. Litig.*, No. 3:05-cv-01250 (VLB), 2008 U.S. Dist. LEXIS 17405, at *7 (D. Conn. Mar. 7, 2008) ("The Court therefore concludes that the second *Grinnell* factor is of greatest importance in approving the class action settlement."); *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *21. Here, in response to a wide-ranging Court-approved notice program, not a single Class Member has objected, or requested exclusion from the Class. Thus, the positive reaction of the Class, those affected by the Settlement, underscores the propriety of the Settlement and provides adequate support for approving the Settlement.

### 3.    The Stage of the Proceedings and Discovery Completed

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact.  It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. . . .  At minimum, the court must possess sufficient information to raise its decision above mere conjecture."  4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11.45, at 127, 128 (4th ed. 2002).  "Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."  *Global Crossing*, 225 F.R.D. at 458.  *See also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (not necessary for court to find parties engaged in extensive discovery; must merely find that they engaged in sufficient investigation to enable court to make intelligent appraisal of case) (citing *Plummer v. Chem. Bank*, 668 F.2d 654 (2d Cir. 1982)), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also Veeco*, 2007 U.S. Dist. LEXIS 85629, at *22-*23 ("the parties need not have engaged in full discovery for a settlement to be approved as fair"); *Sony*, 2008 U.S. Dist. LEXIS 36093, at *22-*23 (same).  "The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'"  *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *12 (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)).

Here, Lead Counsel negotiated a substantial settlement only after vigorous litigation over a three-year period.  As detailed in the Burkholz Declaration, Lead Counsel: conducted an extensive factual investigation in order to draft a consolidated complaint that withstood Defendants' motion to dismiss; obtained class certification over Defendants' opposition; reviewed and analyzed over 2.5 million pages of documents produced by Defendants and third-parties; reviewed tens of thousands of pages of deposition and trial testimony from the litigation between ADVO and Valassis; took eight fact depositions and that of Defendants' class certification expert and defended the Lead Plaintiff's

deposition after responding to discovery directed to the Lead Plaintiff; engaged a loss causation expert for class certification purposes and defended his deposition; worked with that expert on damage issues during settlement negotiations; began trial preparation; and conducted arm's-length mediation with Defendants assisted by Judge Phillips following earlier unsuccessful mediation before the Honorable Eugene F. Lynch (Ret.). Lead Counsel certainly had a clear picture of the strengths and weaknesses of this case and of the legal and factual defenses that Defendants would likely raise at trial. *Teachers' Ret. Sys. of La. v. A.C.L.N.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) (finding action had advanced to a stage where parties "'have a clear view of the strengths and weaknesses of their cases'") (citation omitted); *see also Heyer v. N.Y. City Hous. Auth.*, No. 80 Civ. 1196 (RWS), 2006 U.S. Dist. LEXIS 25089, at *9 (S.D.N.Y. Apr. 28, 2006) (although limited discovery was completed before settlement negotiations began, familiarity of counsel for all parties with case justifies settlement). There can, therefore, be no question that Lead Counsel had more than sufficient information to intelligently negotiate the terms of the Settlement that is before the Court for approval. *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001). Thus, this Court should find that this factor also supports the Settlement.

### 4.     The Risk of Establishing Liability

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463; *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *25; *Austrian & German Bank*, 80 F. Supp. 2d at 177. While Lead Counsel believe that Lead Plaintiff could survive Defendants' motion for summary judgment, it is also clear that ultimate success is not assured, and this very substantial Settlement, when viewed in light of the risks of proving liability, is undoubtedly fair, adequate, and reasonable. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53

- 11 -

(S.D.N.Y. 1993) (when evaluating securities class action settlements, courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'") (quoting *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973)); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971) ("Stockholder litigation is notably difficult and unpredictable.").

Lead Plaintiff faced numerous hurdles to establishing liability. This Action involves claims for relief under the Securities Exchange Act of 1934 (the "Exchange Act"). To prevail on his claims, Lead Plaintiff must demonstrate that Defendants made misstatements or omissions of material fact with scienter in connection with the sale or purchase of securities – that Defendants intentionally engaged in this conduct for the purpose of misleading investors.[6] *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). Based on the defenses that Defendants have raised, Lead Counsel recognize that establishing liability at trial was not guaranteed. *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 U.S. Dist. LEXIS 17588, at *39 (S.D.N.Y. Apr. 6, 2006) ("[t]he difficulty of establishing liability is a common risk of securities litigation").

### a.    Defenses to Loss Causation

Lead Plaintiff faced an uphill battle to prove loss causation, *i.e.*, that Defendants' fraud caused Lead Plaintiff and the Class to suffer economic loss. Under the Supreme Court's holding in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 338 (2005), a "private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss." Defendants viewed as one of their strongest defenses that Lead Plaintiff had not, and could not, properly account for the damages

---

[6]     Proof of scienter can be established: "'(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Whalen v. Hibernia Foods PLC*, No. 04 Civ. 3182, 2005 U.S. Dist. LEXIS 15489, at *6 (S.D.N.Y. Aug. 1, 2005) (citation omitted). Although recklessness has been held to satisfy the scienter requirement, *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000), this too is a difficult standard.

attributable to Defendants' alleged misrepresentations. Specifically, Defendants argued that none of the alleged misrepresentations made by ADVO to Valassis during merger negotiations were made to the public; that any revelation of truth was revealed prior to any decline in ADVO's stock price; and that the alleged disclosure of the "truth" did not reveal the falsity of any prior public misrepresentations made by ADVO. The crux of Defendants' arguments was that the alleged disclosure of the fraud – Valassis's announcement of its lawsuit against ADVO – could not have revealed the falsity of Defendants' prior misrepresentations because ADVO believed the lawsuit was a sham, initiated by Valassis as a result of buyer's remorse and the desire to appease its shareholders, who strongly opposed the deal. Burkholz Decl., ¶65. Although Lead Plaintiff countered those contentions with arguments of his own, significant risk of proving damages for the entirety of the Class Period existed.

### b.    Defenses to Scienter

Defendants also argued that Lead Plaintiff would be unable to prove the Defendants knew that the statements at issue were false when made or that there were any other indicia of scienter. Burkholz Decl., ¶66. Defendants claimed that they had no intention to defraud ADVO shareholders, but were in fact trying to obtain the highest possible merger price from Valassis. Valassis ultimately withdrew its fraud allegations, and admitted no fraud had in fact occurred in connection with the merger negotiations. Defendants would certainly highlight that fact in countering any evidence of scienter. Defendants further argued that they had no duty to provide the public with ongoing updates concerning ADVO's business and financial condition, but were only required to make quarterly disclosures. *Id.* Defendants maintained that Lead Plaintiff's allegations concerned interim financial reports, which Defendants were not required to disclose. *Id.* Lead Plaintiff vigorously disagreed with these arguments, but if the Court or fact finder agreed with Defendants, the case would end with the Class receiving nothing.

- 13 -

### c.    Defenses to Falsity and Materiality

Defendants maintained that they disclosed all material business and financial information to Valassis during the merger negotiations, and had adequately disclosed any risks of the transaction to both the public and Valassis. Defendants argued further that even if they had made false statements to Valassis during the merger negotiations, those statements were not actionable by Class Members, because none of those statements were publicly made.

Defendants also argued that any of the information allegedly withheld by them to Valassis was not material to Valassis's offering price for ADVO. They maintained that because Valassis was a strategic buyer, it was focused on enhancing the Company's competitive position, and was not acquiring ADVO for its independent value. Thus, its near-term business and financial condition were immaterial to Valassis's offer.

In sum, although Lead Plaintiff remained confident in his ability to ultimately prove his claims and to counter any asserted affirmative defense, the risks of this Action being dismissed at the summary judgment stage on any of the above-noted grounds, or of losing at trial, when weighed against the immediate and substantial benefits of settlement, indicate that the Settlement is in the best interest of the Class.

### 5.    The Considerable Risk of Establishing Damages

Even if he successfully established liability, Lead Plaintiff also faced substantial risk in proving the existence and the amount of damages. *See In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *11-*12 (S.D.N.Y. Sept. 29, 2003) (noting difficulty of proving damages in securities cases). In order to prevail on his Exchange Act claims, Lead Plaintiff would be required to prove that the Defendants' false and misleading statements inflated the price of ADVO common stock during the Class Period, and would also be required to prove the amount of the artificial inflation. Lead Counsel, with the assistance of their

486665_1

economic consultant, calculated the artificial inflation in the market price of ADVO common stock that in their opinion was attributable to the alleged wrongdoing. This figure assumes that every element of the Class's damages theory is accepted by a jury as being correct and recoverable. It also assumes that the Class Period would remain as alleged. As such, its viability as an actual calculation for damages could be affected by many factors that arise in this type of litigation, such as Defendants' rebuttals and defenses to Lead Plaintiff's damage calculations and expert testimony.

The presentation of damages is a complex matter which would require the presentation of expert testimony. As a result, Lead Counsel already know that the Class will ultimately face a "battle of experts" – a battle in which no party is ever assured to prevail. While Lead Counsel believe that reliable and convincing expert testimony can be provided on the damages question, and that a judgment could ultimately be obtained for the full amount of damages available under the law, meaningful obstacles remain. First, the Court must determine that Lead Plaintiff's damages model is admissible – and only then may a jury determine whether Lead Plaintiff's or Defendants' model is more accurate. The Class is by no means assured of a ruling in their favor. *See, e.g.*, *Carpe v. Aquila, Inc.*, No. 02-0388-CV-W-FJG, slip op. (W.D. Mo. Mar. 23, 2005) (granting defendants' motion to exclude plaintiffs' expert testimony);[7] *Kaufman v. Motorola, Inc.*, No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627, at *7 (N.D. Ill. Sept. 21, 2000) (precluding in part plaintiffs' expert testimony). It is then possible that, in the unavoidable "battle of experts," a jury might disagree with the Class's expert, or merely find Defendants' expert more persuasive.[8] As a result of the

---

[7]      All unreported authorities referred to herein are attached hereto.

[8]      *See, e.g.*, *PaineWebber*, 171 F.R.D. at 129 (noting unpredictability of outcome of battle of damage experts); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."), *aff'd*,

aforementioned considerations, the likelihood of proving damages, even assuming the Class prevailed on the liability issue, is somewhat difficult. *See Veeco*, 2007 U.S. Dist. LEXIS 85629, at *29. As a result, this factor also weighs in favor of the Settlement.

### 6.     The Risks of Maintaining the Class Action Through Trial

Had the Settlement not been reached, there is no assurance of maintaining class status, since a court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."); *see also Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001) (decertifying class, finding proposed class representatives did not sufficiently remain apprised of status and claims of litigation). Absent settlement, Lead Counsel expect that Defendants would, prior to trial, seek to have the Class decertified. The Settlement avoids any uncertainty with respect to these issues.

### 7.     The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). "[T]he Court is not to compare the terms of the Settlement with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion." *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *33. The Court need only determine whether the Settlement falls within a "'range of

---

798 F.2d 35 (2d Cir. 1986). *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe").

reasonableness.'" *PaineWebber*, 171 F.R.D. at 130 (citation omitted); *Newman*, 464 F.2d at 693 ("[I]n any case there is a range of reasonableness with respect to a settlement."). *See also Indep. Energy*, 2003 U.S. Dist. LEXIS 17090, at *13 (noting few cases tried before jury result in full amount of damages claimed). The Second Circuit has described the "'range of reasonableness'" as "'a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in . . . any litigation.'" *Wal-Mart Stores*, 396 F.3d at 119 (quoting *Newman*, 464 F.2d at 693). Nevertheless, this Settlement, which represents nearly 10% of Lead Plaintiff's estimate of *maximum* provable damages, far exceeds the average recovery in shareholder litigation. *See* Ellen M. Ryan, Laura E. Simmons, *Securities Class Action Settlements, 2008 Review and Analysis*, at 6 (Cornerstone Research 2009) (settlements as a percentage of "estimated damages" averaged 3.2% in 2008); Stephanie Plancich, Ph.D., Brian Saxton, Svetlana Starykh, *Recent Trends in Shareholder Class Actions: Filings Return to 2005 Levels as Subprime Cases Take Off; Average Settlements Hit New High*, at 14 (NERA 2007) (median ratio of settlements to investor losses in 2007 was 2.4%).[9]

In light of the complex legal and factual issues typically present in securities class actions, the unpredictability of a lengthy and complex trial and the appellate process that would most likely follow, the fairness of a substantial settlement is clearly apparent. *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002).

## 8. The Ability of the Defendants to Withstand a Greater Judgment

The court may also consider the defendants' ability to withstand a judgment greater than that secured by settlement. *Grinnell*, 495 F.2d at 463. The fact that ADVO *could* have paid more money

---

[9]    Not surprisingly, Defendants calculated damages, if any, at significantly less than Lead Plaintiff.

does not render the Settlement unreasonable.  *See Warfarin*, 391 F.3d at 538 ("[T]he fact that DuPont could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached."); *Sony*, 2008 U.S. Dist. LEXIS 36093, at *23 ("a defendant is not required to 'empty its coffers' before a settlement can be found adequate") (citation omitted).  "Where, as here, the other Grinnell factors weigh in favor of approval, this factor alone does not suggest the settlement is unfair."  *Id.* at *23-*24.

Accordingly, Lead Counsel submit that this Court should find that the *Grinnell* factors, taken together, weigh in favor of the Settlement and that the Settlement should be approved.

## IV.    THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

The standard for approval of a plan of allocation is the same as the standard for approving the settlement as a whole: "'namely, it must be fair and adequate.'"  *Maley*, 186 F. Supp. 2d at 367 (citation omitted); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343 (S.D.N.Y. 2005).  "'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case."  *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) (citation omitted).  *See also Priceline.com*, 2007 U.S. Dist. LEXIS 52538, at *11-*12.  A plan of allocation "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel."  *Am. Bank Note*, 127 F. Supp. 2d at 429-30 (citation omitted); *see also WorldCom*, 388 F. Supp. 2d at 344 (same).  Further, courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably."  *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978).

- 18 -

The Plan of Allocation, which was fully described in the Notice, has a rational basis and was formulated by Lead Counsel, in consultation with damage experts, ensuring its fairness and reliability. *See Veeco*, 2007 U.S. Dist. LEXIS 85629, at \*39. Under the proposed Plan of Allocation, each Authorized Claimant (as defined above) will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, the settlement consideration less taxes, approved costs, fees, and expenses), with that share to be determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants.

The Plan of Allocation takes into account when Class Members purchased and when and whether Class Members sold their ADVO common stock during the Class Period. Accordingly, some shareholders may benefit more from the Settlement than others depending upon when they made their transactions. This is fair and reasonable, as there is no rule that a settlement benefit all class members equally. *Veeco*, 2007 U.S. Dist. LEXIS 85629, at \*39; *Global Crossing*, 225 F.R.D. at 462. Indeed, it is appropriate for interclass distributions to be based upon, among other things, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue. *See In re Holocaust Victim Assets Litig.*, 413 F.3d 183, 186 (2d Cir. 2001). Otherwise, certain class members may receive an inequitable windfall, to the detriment of others. *PaineWebber*, 171 F.R.D. at 133.

Lead Counsel believe that the Plan of Allocation is fair and reasonable, and respectfully submit that it should be approved by the Court. It should be noted that not a single objection to the Plan of Allocation has been filed, which also supports its approval by the Court. *See Priceline.com*, 2007 U.S. Dist. LEXIS 52538, at \*12; *Veeco*, 2007 U.S. Dist. LEXIS 85629, at \*40; *Maley*, 186 F. Supp. 2d at 367.

## V.     CONCLUSION

The Settlement reached in this Action is an excellent result under the challenging circumstances facing the Class.  For the foregoing reasons, the Settlement and Plan of Allocation of the settlement proceeds are fair, reasonable, and adequate and should be granted the Court's final approval.

DATED:  February 10, 2010                    Respectfully submitted,

                                             IZARD NOBEL LLP
                                             JEFFREY S. NOBEL (CT 04855)
                                             NANCY A. KULESA (CT 25384)
                                             29 South Main Street, Suite 215
                                             West Hartford, CT  06107
                                             Telephone:  860/493-6292
                                             860/493-6290 (fax)

                                             Liaison Counsel

                                             COUGHLIN STOIA GELLER
                                               BURKHOLZ & ROBBINS LLP
                                             SPENCER A. BURKHOLZ
                                             JONAH H. GOLDSTEIN
                                             ELLEN GUSIKOFF STEWART
                                             ERIC I. NIEHAUS
                                             JENNIFER L. GMITRO


                                             _____*s/ Ellen Gusikoff Stewart*_____
                                             ELLEN GUSIKOFF STEWART

                                             655 West Broadway, Suite 1900
                                             San Diego, CA  92101-3301
                                             Telephone:  619/231-1058
                                             619/231-7423 (fax)

                                             Lead Counsel for Plaintiffs

486665_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 10, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 10, 2010.

*s/ Ellen Gusikoff Stewart*
ELLEN GUSIKOFF STEWART

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:elleng@csgrr.com

# Mailing Information for a Case 3:06-cv-01422-AVC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Spencer A. Burkholz**
  SpenceB@csgrr.com,hectorm@csgrr.com,e_file_sd@csgrr.com

- **Courtland W. Creekmore**
  e_file_sd@csgrr.com

- **Sharleen Joy Davis**
  sharleen.davis@klgates.com

- **David J. Elliott**
  djelliott@daypitney.com,dcharles@daypitney.com

- **Rory FitzPatrick**
  rory.fitzpatrick@klgates.com,joanne.healy@klgates.com

- **Jennifer L. Gmitro**
  JGmitro@csgrr.com

- **Jonah H. Goldstein**
  jonahg@csgrr.com

- **Ellen Gusikoff**
  elleng@csgrr.com

- **Shawn M. Harpen**
  sharpen@mwe.com

- **Helen Harris**
  hharris@daypitney.com

- **Ari J. Hoffman**
  ahoffman@cohenandwolf.com

- **Stuart M. Katz**
  skatz@cohenandwolf.com

- **Nancy A. Kulesa**
  nkulesa@izardnobel.com

- **Eric Landau**
  elandau@mwe.com

- **Elizabeth Leise**
  Elizabeth_Leise@aporter.com

- **John C. Massaro**
  John_Massaro@aporter.com

- **William S. McDermott**
  smcdermott@klng.com

- **David S. Mendelson**
  dm@mendelsonlaw.net,tguellec@hymanlippitt.com

- **Eric I. Niehaus**
  ericn@csgrr.com

- **Kavita Kumar Puri**
  Kavita.Kumar.Puri@aporter.com

- **Scott B. Schreiber**
  Scott_Schreiber@aporter.com

- **Robert Schwartz**
  Robert.Schwartz@aporter.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)