UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT KELLEHER, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 3:06-cv-01422-AVC **(Consolidated)** |
| Plaintiff, | ) ) | <u>CLASS ACTION</u> |
| vs. | ) ) ) | LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED |
| ADVO, INC., et al., | ) ) | MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES |
| Defendants. | ) ) ) | |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................1

II.     PRELIMINARY STATEMENT ................................................................1

III.    HISTORY OF THE LITIGATION ............................................................3

IV.     ARGUMENT ...............................................................................................6

      A.      Lead Counsel Are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund ................................................................6

      B.      The Court Should Award a Reasonable Percentage of the Common Fund ............7

      C.      The Relevant Factors Confirm that the Requested Fee Is Reasonable .................10

            1.      The Time and Labor Expended by Counsel ..............................................10

            2.      The Risks of the Litigation ........................................................................11

                  a.      The Contingent Nature of Lead Counsel's Representation Supports the Requested Fee ........................................................11

                  b.      Litigation Risks ...............................................................................13

                  c.      Risk as to Damages .........................................................................14

             3.      The Magnitude and Complexity of the Litigation .....................................15

            4.      The Quality of Representation ...................................................................16

            5.      Public Policy Considerations .....................................................................16

      D.      The Requested Attorneys' Fees Are Also Reasonable Under the Lodestar Cross-Check ..............................................................................18

      E.      The Requested Attorneys' Fees Are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method .....................................20

      F.      The Class's Reaction to the Fee Request .............................................................22

V.      LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS ACTION .........................................22

VI.     REIMBURSEMENT OF LEAD PLAINTIFF'S TIME AND EXPENSES......................23

VII.    CONCLUSION...........................................................................................24

- i -

# TABLE OF AUTHORITIES

Page

## CASES

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ......................................................................12

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ......................................................................................16

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985) ..................................................................................6, 17

*Blum v. Stenson*,
   465 U.S. 886 (1984) ......................................................................................21

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ........................................................................................6

*Brown v. Phillips Petroleum Co.*,
   838 F.2d 451 (10th Cir. 1988) ........................................................................7

*Camden I Condo. Ass'n v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ........................................................................7

*Chatelain v. Prudential-Bache Sec.*,
   805 F. Supp. 209 (S.D.N.Y. 1992) ...........................................................15, 17

*Cosgrove v. Sullivan*,
   759 F. Supp. 166 (S.D.N.Y. 1991) ...............................................................20

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974).........................................................................11

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976).......................................................................................13

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)..............................................................9, 22

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)..................................................................... *passim*

*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) ..........................................................................7

- ii -

**Page**

*Hicks v. Morgan Stanley & Co.*,
  No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
  (S.D.N.Y. Oct. 24, 2005) ...................................................................................8, 21

*In re Acclaim Entm't, Inc. Sec. Litig.*,
  No. 2:03-CV-1270 (JS) (ETB),
  slip op. (E.D.N.Y. Oct. 2, 2007) ...........................................................................21

*In re Am. Bank Note Holographics*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001).............................................................8, 9, 11

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  No. MDL 1500, 2006 U.S. Dist. LEXIS 17588
  (S.D.N.Y. Apr. 6, 2006)...........................................................................................15

*In re Apollo Group, Inc. Sec. Litig.*,
  No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
  (D. Ariz. Aug. 4, 2008) ............................................................................................12

*In re Brown Co. Sec. Litig.*,
  355 F. Supp. 574 (S.D.N.Y. 1973) ...........................................................................16

*In re Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ....................................................................................11

*In re Doral Fin. Corp. Sec. Litig.*,
  No. 1:05-md-01706-RO, slip op.
  (S.D.N.Y. July 17, 2007) ......................................................................................8, 19

*In re Gilat Satellite Networks, Ltd.*,
  No. CV-02-1510 (CPS) (SMG), 2007 U.S. Dist. LEXIS 68964
  (E.D.N.Y. Sept. 18, 2007).........................................................................................8

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .....................................................................8, 9, 23

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995).........................................................................................7

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
  142 F.R.D. 588 (S.D.N.Y. 1992) ...............................................................................9

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000).........................................................................15, 20

**Page**

*In re Indep. Energy Holdings PLC Sec. Litig.*,
 302 F. Supp. 2d 180 (S.D.N.Y. 2003)...........................................................................23

*In re Interpublic Sec. Litig.*,
 No. Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429
 (S.D.N.Y. Oct. 27, 2004) ...........................................................................7

*In re Ivan F. Boesky Sec. Litig.*,
 888 F. Supp. 551 (S.D.N.Y. 1995) ...........................................................................19

*In re JDS Uniphase Corp. Sec. Litig.*,
 No. C 02-1486 CW (EDL), 2007 WL 4788556
 (N.D. Cal. Nov. 27, 2007)...........................................................................12

*In re Lloyd's Am. Trust Fund Litig.*,
 No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663
 (S.D.N.Y. Nov. 26, 2002) ...........................................................................9

*In re Med. X-Ray Film Antitrust Litig.*,
 No. CV-93-5904, 1998 U.S. Dist. LEXIS 14888
 (E.D.N.Y. Aug. 7, 1998)...........................................................................17

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
 No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450
 (S.D.N.Y. Feb. 1, 2007) ...........................................................................19

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
 187 F.R.D. 465 (S.D.N.Y. 1998) ...........................................................................19

*In re OSI Pharms., Inc. Sec. Litig.*,
 No. 2:04-CV-05505-JS-WDW, slip op.
 (E.D.N.Y. Aug. 22, 2008) ...........................................................................8, 21

*In re Priceline.com, Inc. Sec. Litig.*,
 No. 3:00-CV-1884(AVC), 2007 U.S. Dist. LEXIS 52538
 (D. Conn. July 20, 2007)...........................................................................6, 10, 17, 21

*In re Prudential Sec. Ltd. P'ships Litig.*,
 985 F. Supp. 410 (S.D.N.Y. 1997) ...........................................................................11

*In re Rite Aid Corp. Sec. Litig.*,
 396 F.3d 294 (3d Cir. 2005)...........................................................................22

- iv -

**Page**

*In re RJR Nabisco, Inc. Sec. Litig.*,
  No. MDL 818 (MBM), 1992 U.S. Dist. LEXIS 12702
  (S.D.N.Y. Aug. 24, 1992) ...................................................................20

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y. 1999)...................................................9

*In re Superior Beverage/Glass Container Consol. Pretrial*,
  133 F.R.D. 119 (N.D. Ill. 1990)...........................................................20

*In re Tommy Hilfiger Sec. Litig.*,
  No. 1:04-CV-07678-SAS, slip op.
  (S.D.N.Y. Oct. 15, 2008) ....................................................................21

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) .............................................17, 18

*In re United Rentals, Inc. Sec. Litig.*,
  No. 3-04-cv-1615(CFD), slip op.
  (D. Conn. May 26, 2009) ......................................................................8

*In re Van Der Moolen Holding N.V. Sec. Litig.*,
  No. 1:03-CV-8284 (RWS), slip op.
  (S.D.N.Y. Dec. 6, 2006).......................................................................21

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554
  (S.D.N.Y. Nov. 7, 2007) ....................................................6, 7, 8, 21

*In re Warnaco Group, Inc. Sec. Litig.*,
  No. 00 Civ. 6266 (LMM), 2004 U.S. Dist. LEXIS 13126
  (S.D.N.Y. July 13, 2004) .....................................................................22

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985),
  *aff'd*, 798 F.2d 35 (2d Cir. 1986) ...............................................17, 18

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005)................................................18

*In re WorldCom, Inc. Sec. Litig.*,
  No. 02 Civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 22992
  (S.D.N.Y. Nov. 12, 2004) ......................................................................9

505809_1

**Page**

*J.I. Case Co. v. Borak*,
377 U.S. 426 (1964) ..............................................................................7

*Johnston v. Comerica Mortgage Corp.*,
83 F.3d 241 (8th Cir. 1996) ..................................................................7

*Kurzweil v. Philip Morris Cos.*,
No. 94 Civ. 2373 (MBM), 1999 U.S. Dist. LEXIS 18378
(S.D.N.Y. Nov. 30, 1999) ....................................................................19

*Liberty Capital Group, Inc. v. KongZhong Corp.*,
No. 1:04-CV-06746-SAS, slip op.
(S.D.N.Y. Apr. 14, 2006) ....................................................................22

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
487 F.2d 161 (3d Cir. 1973), subsequently refined in
*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*,
540 F.2d 102 (3d Cir. 1976) ................................................................18

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................. *passim*

*Mathes v. Roberts*,
85 F.R.D. 710 (S.D.N.Y. 1980) ..........................................................15

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ......................................................................19, 21

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
711 F.2d 1136 (2d Cir. 1983) .............................................................19

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ...............................................................7

*Plumbers and Pipefitters Local Union No. 630 Pension
Annuity Trust Fund v. Greenfield Online, Inc.*
No. 3:07-cv-01118-VLB, slip op.
(D. Conn. Jan. 23, 2009) .......................................................................8

*Rabin v. Concord Assets Group*,
No. 89 CIV 6130 (LBS), 1991 U.S. Dist. LEXIS 18273
(S.D.N.Y. Dec. 19, 1991)......................................................................20

*Rawlings v. Prudential-Bache Props.*,
9 F.3d 513 (6th Cir. 1993) ....................................................................7

505809_1

Page

*Ressler v. Jacobson*,
    149 F.R.D. 651 (M.D. Fla. 1992)..................................................................16, 17

*Robbins v. Koger Props.*,
    116 F.3d 1441 (11th Cir. 1997) .................................................................12

*Roberts v. Texaco, Inc.*,
    979 F. Supp. 185 (S.D.N.Y. 1997) ...........................................................20

*Savoie v. Merchants Bank*,
    166 F.3d 456 (2d Cir. 1999)....................................................................6, 7

*Silverberg v. People's Bank*,
    23 Fed. Appx. 46 (2d Cir. 2001) ..............................................................21

*Six Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ...................................................................7

*Spann v. AOL Time Warner, Inc.*,
    No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848
    (S.D.N.Y. June 7, 2005)............................................................................22

*Stefaniak v. HSBC Bank USA, N.A.*,
    No. 1:05-CV-720 S, 2008 U.S. Dist. LEXIS 53872
    (W.D.N.Y. July 8, 2008)........................................................................8, 21

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ......................................................9

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ....................................................................7

*Taft v. Ackermans*,
    No. 02 Civ 7951 (PKL), 2007 U.S. Dist. LEXIS 9144
    (S.D.N.Y. Jan. 31, 2007)......................................................................18, 21

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
    No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS 8608
    (S.D.N.Y. May 14, 2004)..........................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..............................................................................7, 17

*TSC Indus. v. Northway, Inc.*,
    426 U.S. 438 (1976)..................................................................................13

Page

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)......................................................................8, 9

*Weiss v. Mercedes-Benz of N. Am.*,
    899 F. Supp. 1297 (D.N.J. 1995) ...................................................................20

*Zerkle v. Cleveland-Cliffs Iron Co.*,
    52 F.R.D. 151 (S.D.N.Y. 1971) .....................................................................15

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78j(b)..................................................................................................3
    §78t(a)..................................................................................................3
    §78u-4(a)(4) ....................................................................................1, 23
    §78u-4(a)(6) ...........................................................................................8

Federal Rules of Civil Procedure
    Rule 26 ..................................................................................................4

17 C.F.R.
    §240.10b-5 ............................................................................................3

## SECONDARY AUTHORITIES

1 Alba Conte, *Attorney Fee Awards* (2d ed. 1993)
    §2.06....................................................................................................20

Charles Alan Wright, Arthur R. Miller, Mary Kay Kane,
*Federal Practice and Procedure* (3d ed. 2005)
    §1803...................................................................................................6

Third Circuit Task Force, *Court Awarded Attorney Fees*
    108 F.R.D. 237 (Oct. 8, 1985) ......................................................................8

505809_1

## I.      INTRODUCTION

Lead Plaintiff's counsel ("Lead Counsel")[1] have succeeded in obtaining a settlement consisting of $12.5 million for the benefit of the Class.  This is an excellent result in light of the risks faced and overcome, and is a credit to Lead Counsel's vigorous and creative efforts and objective evaluation of the serious obstacles to recovery.  Lead Counsel now respectfully move this Court for an award of attorneys' fees in the amount of 30% of the Settlement Fund.[2]  In addition, Lead Counsel request $515,992.10 in expenses that were reasonably and necessarily incurred in prosecuting this consolidated class action (the "Litigation") and obtaining this substantial Settlement for the benefit of the Class,[3] and the Estate of Lead Plaintiff Robert Kelleher seeks $2,061.20 pursuant to 15 U.S.C. §78u-4(a)(4) for his efforts and service to the Class during the Litigation.[4]

## II.     PRELIMINARY STATEMENT

Lead Counsel have obtained an excellent result for the Class, notwithstanding the risk that the case could be dismissed after years of litigation and the expense of hundreds of thousands of additional dollars in time and expenses, upon summary judgment or at trial.  As explained below and

---

[1]      All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Stipulation of Settlement dated October 28, 2009 (the "Stipulation").

[2]      The notice mailed to Class Members stated that Lead Counsel would seek a fee not to exceed 30% of the Settlement Fund and expenses not to exceed $600,000.

[3]      In support of this application for attorneys' fees and expenses, Lead Counsel also submit herewith the Declaration of Spencer A. Burkholz in Support of Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds, and Award of Attorneys' Fees and Expenses ("Burkholz Decl.").

[4]      Mr. Kelleher passed away on November 8, 2009, but had provided Lead Counsel with detail on his time spent on the Litigation, and had given his approval of the Settlement.  *See* Burkholz Decl., ¶11 and Exhibit A thereto.

- 1 -

in the Burkholz Declaration,[5] Lead Counsel expended significant time and expenses and overcame significant potential obstacles to reach this substantial resolution for the Class. Specifically, in addition to issues regarding each Defendant's scienter, Lead Plaintiff faced significant loss causation hurdles, because, among other things, Defendants maintained that the decline in ADVO's stock price at the end of the Class Period was not related to any revelation by the Company about fraud in connection with the Company's proposed merger with Valassis. Burkholz Decl., ¶67. At the close of the Class Period, ADVO announced that Valassis had filed suit against the Company, alleging, among other things, fraud in the negotiations. If any or all of Defendants' defenses prevailed, damages would have been significantly less than Lead Plaintiff's expert had calculated, and the recovery for the Class would have been significantly less than that obtained here. Thus, Lead Counsel's efforts have resulted in an excellent recovery.

For their efforts and the risks and contingencies they faced, Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 30% of the Settlement Fund, plus expenses in the amount of $515,922.10, plus interest on both amounts. In addition, the Estate of Lead Plaintiff Robert Kelleher seeks reimbursement of $2,061.20 for his time and expenses incurred in representing the Class. Following an extensive Court-ordered notice program, not a single Class Member has objected to these fee and expense requests, and Lead Counsel respectfully submit that these amounts are fair and reasonable under the circumstances.[6]

---

[5]    The Burkholz Declaration is an integral part of this submission. The Court is respectfully referred to it for a detailed description of the factual and procedural history of the Litigation, the claims asserted, Lead Plaintiff's and Lead Counsel's investigation and litigation efforts, and the negotiations leading to this Settlement.

[6]    The deadline to object expires today, but to date not a single Class Member has lodged any objection to the fee request. Pursuant to the Court's December 8, 2009 Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order"), more than 8,700 copies of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice")

### III.    HISTORY OF THE LITIGATION

From the outset of this Litigation and despite the mandatory discovery stay imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Lead Counsel undertook an extensive investigation and analysis, including reviewing ADVO's public filings, financial statements and other public statements, as well as analyst reports on the Company. Lead Counsel also reviewed the pleadings in the litigation between ADVO and Valassis. Early in the case, Lead Plaintiff also moved to lift the mandatory discovery stay for the limited purpose of having ADVO's documents produced to Valassis in its litigation produced to Lead Plaintiff. That motion was denied.

Following their initial investigation, Lead Counsel filed the Consolidated Class Action Complaint of Lead Plaintiff Robert Kelleher on Behalf of Purchasers and Acquirers of ADVO, Inc. Publicly Traded Securities for Violation of the Federal Securities Laws (the "Consolidated Complaint") setting forth the fruits of this investigation and analysis. The Consolidated Complaint alleged violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder by the SEC, against the Defendants. The Consolidated Complaint alleged that during the period between July 6, 2006 and August 30, 2006, Defendants disseminated materially false and misleading statements concerning ADVO's business and financial condition and the information provided to Valassis in connection with the pending merger. Lead Plaintiff alleged that Defendants deceived Valassis about the true financial condition of the Company in order to obtain the highest merger price, and to accelerate stock option vesting for otherwise unprofitable underwater options. Lead Plaintiff alleged that as a result of these misrep-

---

were mailed to potential Class Members, advising that Lead Counsel intended to apply to the Court for an award of attorneys' fees not to exceed 30% of the Settlement Fund, plus expenses of no greater than $600,000. If any objections are received, Lead Counsel will address them in a reply memorandum, which will be filed by February 24, 2010.

505809_1

resentations and omissions, ADVO common stock traded at artificially inflated prices during the Class Period, in violation of the federal securities laws.  On August 30, 2006, however, Valassis announced that it would seek to rescind the merger agreement with ADVO on the basis of fraud, among other things.  Following that announcement, ADVO's stock price plummeted 22%, or $8 per share.

Defendants moved to dismiss the Consolidated Complaint, arguing that it failed to state a claim as a matter of law because it failed to allege falsity, materiality, loss causation, and scienter.  Lead Plaintiff filed a detailed opposition to the motion, and Defendants filed a reply.  On April 25, 2008, the Court denied the motion in its entirety.

Following the lifting of the PSLRA-mandated discovery stay, Lead Plaintiff moved for class certification, and submitted an expert declaration on market efficiency, materiality and loss causation.  Lead Plaintiff responded to written discovery and provided his deposition in connection with the motion.  Defendants opposed Lead Plaintiff's motion, challenging certification on a number of grounds.  Defendants submitted their own expert's declaration in support of their opposition.  Lead Plaintiff filed a reply brief, along with a rebuttal expert report and an opposition to Defendants' request for an evidentiary hearing.  On March 30, 2009, the Court granted Lead Plaintiff's motion in its entirety and denied Defendants' motion for an evidentiary hearing.

During the pendency of Lead Plaintiff's motion for class certification, merits discovery got underway.  The parties held their Rule 26 conference, and stipulated that Defendants would produce all deposition transcripts and their exhibits from the ADVO/Valassis litigation, as well as all trial transcripts and exhibits.  This resulted in the production of over 2.5 million pages of documents and hundreds of hours of videotape.  For over a year, attorneys reviewed and analyzed this discovery.

505809_1

Lead Counsel also subpoenaed several third parties who were not part of the prior litigation, and following negotiations over the scope of production, obtained and reviewed an additional 175,000 pages of documents.

In February and March 2009, Lead Counsel took eight depositions of current and former ADVO employees. These depositions took place in Connecticut, Michigan and California. At these depositions, Lead Counsel authenticated documents, and obtained critical information concerning the types of reports and documents generated, maintained and circulated at the Company. This information was helpful for requesting additional, previously unproduced documents. The depositions also provided important evidence supporting Lead Plaintiff's allegations.

As further detailed in the Burkholz Declaration, during discovery a number of disputes arose between the parties, and a significant amount of time was spent attempting to resolve them. Following hours of "meeting and conferring," all of the disputes were resolved without Court intervention. The parties also negotiated and agreed upon a confidentiality order, which was entered by the Court, but then spent many hours negotiating whether certain documents were appropriately covered by the order.

The parties first discussed settlement in late 2008, and in February 2009 attended formal mediation before the Honorable Eugene F. Lynch (Ret.). That mediation was unsuccessful, however, and litigation continued. In mid-2009, the parties again discussed the possibility of settlement, and agreed to another mediation, this time before the Honorable Layn R. Phillips (Ret.). Following the mediation, Judge Phillips presented each side with a "mediator's proposal" to settle for $12.5 million. Both sides accepted the proposal, and following negotiations lasting another several weeks, the parties ultimately agreed upon the terms of a Stipulation of Settlement, which was executed on October 28, 2009, and presented to the Court along with Lead Plaintiff's unopposed motion for preliminary approval. The motion was granted on December 8, 2009.

IV.    **ARGUMENT**

    A.    **Lead Counsel Are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund**

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999); *In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-CV-1884(AVC), 2007 U.S. Dist. LEXIS 52538, at *13 (D. Conn. July 20, 2007). "The court's authority to reimburse the representative parties . . . stems from the fact that the class-action device is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts." 7B Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* §1803, at 325 (3d ed. 2005). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf. *See also Goldberger*, 209 F.3d at 47; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554, at *7-*8 (S.D.N.Y. Nov. 7, 2007).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *See, e.g.*, *Priceline.com*, 2007 U.S. Dist. LEXIS 52538, at *16-*17; *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002). Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting

*J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

Courts in this Circuit have consistently adhered to these teachings. *See In re Interpublic Sec. Litig.*, No. Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *30-*31 (S.D.N.Y. Oct. 27, 2004) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable fee – set by the court – to be taken from the fund.'") (citation omitted). The "[d]etermination of 'reasonableness' is within the discretion of the district court." *Id.* at *31.

### B.    The Court Should Award a Reasonable Percentage of the Common Fund

The Second Circuit has authorized district courts to employ the percentage-of-the-fund method when awarding fees in common fund cases. *See Goldberger*, 209 F.3d at 47 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used); *Veeco*, 2007 U.S. Dist. LEXIS 85554, at *10. In expressly approving the percentage method, the Second Circuit recognized that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48, 49;[7] *Savoie*, 166 F.3d at 460 (stating that "percentage-of-the-fund method has been deemed a

---

[7]    The use of the percentage-of-the-fund method in common fund cases has been approved by every other Court of Appeals that has addressed the issue. *See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993). Indeed, the Eleventh and District of Columbia Circuits require the use of the percentage method in common fund cases. *Camden*, 946 F.2d at 774; *Swedish Hosp.*, 1 F.3d at 1271.

solution to certain problems that may arise when the lodestar method is used in common fund cases"); *see also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 254-59 (Oct. 8, 1985) (recognizing the many shortfalls of the lodestar method and unequivocally recommending that courts use the percentage method in common fund cases);[8] *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method.").

The trend among district courts in this Circuit, although not uniform, is to award fees using the percentage-of-the-fund method, rather than the lodestar approach. *See, e.g.*, *In re United Rentals, Inc. Sec. Litig.*, No. 3-04-cv-1615(CFD), slip op. (D. Conn. May 26, 2009); *Plumbers and Pipefitters Local Union No. 630 Pension Annuity Trust Fund v. Greenfield Online, Inc.*, No. 3:07-cv-01118-VLB, slip op. (D. Conn. Jan. 23, 2009); *In re OSI Pharms., Inc. Sec. Litig.*, No. 2:04-CV-05505-JS-WDW, slip op. (E.D.N.Y. Aug. 22, 2008);[9] *Stefaniak v. HSBC Bank USA, N.A.*, No. 1:05-CV-720 S, 2008 U.S. Dist. LEXIS 53872, at *9 (W.D.N.Y. July 8, 2008); *Veeco*, 2007 U.S. Dist. LEXIS 85554, at *11; *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS) (SMG), 2007 U.S. Dist. LEXIS 68964, at *39-*40 (E.D.N.Y. Sept. 18, 2007); *In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-md-01706-RO, slip op. (S.D.N.Y. July 17, 2007); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *22 (S.D.N.Y. Oct. 24, 2005) ("The trend in the Second

---

[8]    The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class.  15 U.S.C. §78u-4(a)(6) (emphasis added).  Courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method of determining attorneys' fees in securities class actions.  *See Veeco*, 2007 U.S. Dist. LEXIS 85554, at *11; *Maley*, 186 F. Supp. 2d at 370; *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004).

[9]    All unreported authorities referred to herein are attached hereto.

Circuit recently has been to use the percentage method."); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 188 (W.D.N.Y. 2005); *Global Crossing*, 225 F.R.D. at 446; *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 22992, at *75 (S.D.N.Y. Nov. 12, 2004); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003) (trend in this circuit is to award attorneys' fees using the percentage method), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (same); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at *73 (S.D.N.Y. Nov. 26, 2002); *Maley*, 186 F. Supp. 2d at 370 (same); *see also In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) (stating that "[c]ourts increasingly have come to recognize the shortcomings of the lodestar/multiplier method as a universal rule for compensation"); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992) (holding that "the lodestar formula is undesirable if an alternative is available").

Given the language of the PSLRA, the Supreme Court's indication that the percentage method is proper in this type of case, the Second Circuit's explicit approval of the percentage method in *Goldberger*, and the trend among the district courts in this Circuit, the Court should award Lead Counsel attorneys' fees based on a percentage of the fund. The percentage approach not only aligns the interests of counsel and the class, *Lloyd's Am. Trust Fund*, 2002 U.S. Dist. LEXIS 22663, at *74, it also recognizes that the quality of counsel's services is measured best by the results achieved, and "can serve as a proxy for the market in setting counsel fees." *Am. Bank Note Holographics*, 127 F. Supp. 2d at 432.

**C.        The Relevant Factors Confirm that the Requested Fee Is Reasonable**

The Second Circuit in *Goldberger* explained that whether the court uses the percentage-of-the-fund method or the lodestar approach, it should continue to consider the traditional criteria that reflect a reasonable fee in common fund cases, including:

- the time and labor expended by counsel;

- the risks of the litigation;

- the magnitude and complexity of the litigation;

- the requested fee in relation to the settlement;

- the quality of representation; and

- public policy considerations.

209 F.3d at 50.  *See also Priceline.com*, 2007 U.S. Dist. LEXIS 52538, at *14.  An analysis of these factors demonstrates that the requested fee is reasonable.

**1.        The Time and Labor Expended by Counsel**

Lead Counsel have expended substantial time and effort pursuing this Litigation on behalf of the Class.  Since its inception, Lead Counsel and their paraprofessionals have devoted 11,316.08 hours to this Litigation.  As discussed more fully above and in the Burkholz Declaration, Lead Counsel conducted an extensive investigation of the issues involved in this case, which included utilization of consultants, experts, and forensic accountants.  Lead Counsel undertook this investigation while the PSLRA-mandated discovery stay was in effect.  Lead Counsel also successfully opposed Defendants' motion to dismiss, obtained class certification, and completed the analysis of millions of pages of non-public documents produced by Defendants and third parties. Lead Counsel also conducted nine depositions and defended the Lead Plaintiff's and their class certification expert's depositions.  Completion of this discovery has convinced Lead Counsel that the Settlement obtained here is an excellent one under the circumstances.  Moreover, Lead Counsel, with

- 10 -

the assistance of their damage consultants, calculated the estimated damages suffered by the Class

and prepared the proposed Plan of Allocation.  The legal work on this Litigation will not end with

the Court's approval of the Settlement.  Additional hours and resources will necessarily be expended

assisting Class Members with their Proof of Claim and Release forms, shepherding the claims

process, and responding to Class Members' inquiries.  The tremendous time and effort devoted to

this case by Lead Counsel to obtain a $12.5 million cash settlement confirms that the 30% fee

request is reasonable.

### 2.    The Risks of the Litigation

#### a.    The Contingent Nature of Lead Counsel's Representation Supports the Requested Fee

The Second Circuit has recognized that the risk associated with a case undertaken on a

contingent fee basis is an important factor in determining an appropriate fee award:

> "No one expects a lawyer whose compensation is contingent upon his success to
> charge, when successful, as little as he would charge a client who in advance had
> agreed to pay for his services, regardless of success.  Nor, particularly in complicated
> cases producing large recoveries, is it just to make a fee depend solely on the
> reasonable amount of time expended."

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted).  "Little about

litigation is risk-free, and class actions confront even more substantial risks than other forms of

litigation."  *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS

8608, at *11 (S.D.N.Y. May 14, 2004); *Am. Bank Note Holographics*, 127 F. Supp. 2d at 433

(concluding it is "appropriate to take this [contingent fee] risk into account in determining the

appropriate fee to award"); *In re Prudential Sec. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417

(S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an

important factor in determining the fee award.").  This risk encompasses not just the risk of no

payment, but also the risk of underpayment.  *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70

(7th Cir. 1992) (reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel).

The reasonableness of the requested fee is also supported by an evaluation of the risks undertaken by Lead Counsel in prosecuting this class action. Lead Counsel undertook this action on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute this action without a guarantee of compensation or even the recovery of out-of-pocket expenses. Unlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel have not been compensated for any time or expenses since this case began, and would have received no compensation or even reimbursement of expenses had this case not been successful.[10]

From the outset, Lead Counsel understood that they were embarking on a complex, expensive and lengthy litigation with no guarantee of ever being compensated for the enormous investment of time and money the case would require. In undertaking that responsibility, Lead Counsel were obligated to assure that sufficient attorney and paraprofessional resources were dedicated to the prosecution of the Litigation and that funds were available to compensate staff and to pay for the considerable out-of-pocket costs which a case such as this entails. Because of the

---

[10]    The risk of no recovery in complex cases of this type is real, and is heightened when lead counsel press to achieve the very best result for those they represent. There are numerous class actions in which lead counsel expended thousands of hours and yet received no remuneration despite their diligence and expertise. *See, e.g.*, *In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) (on a motion for judgment as a matter of law, court overturned a jury verdict of $277 million in favor of shareholders based on insufficient evidence presented at trial to establish loss causation); *In re JDS Uniphase Corp. Sec. Litig.*, No. C 02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on basis of 1994 Supreme Court opinion).

- 12 -

nature of a contingent practice where cases are predominantly "big cases" lasting several years, not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

In addition to advancing litigation expenses and paying overhead, Lead Counsel faced the possibility that they would receive no attorneys' fees. It is wrong to presume that a law firm handling complex contingent litigation always wins. Tens of thousands of hours have been expended in losing efforts. The factor labeled by the courts as "the risks of litigation" is not an empty phrase. There are numerous cases where plaintiffs' counsel in contingent cases such as this, after the expenditure of thousands of hours, have received no compensation. It is only because defendants and their counsel know that the leading members of the plaintiffs' securities bar are prepared to, and will, force a resolution on the merits and go to trial, or pursue appeals if necessary, that meaningful settlements in actions such as this can occur.

Losses in contingent fee litigations, especially those brought under the PSLRA, are exceedingly expensive. As a result, the fees that are awarded in successful litigations are used to cover enormous overhead expenses incurred during the course of the litigation and are taxed by federal, state, and local authorities.

### b.    Litigation Risks

While Lead Counsel remain confident in their ability to prove Lead Plaintiff's claims and to effectively rebut Defendants' defenses, they recognize that proving liability was far from certain. To succeed on Lead Plaintiff's claims under the Exchange Act, Lead Counsel must establish, *inter alia*, that each Defendant was responsible for an omission or a misstatement that was material and that caused damage to the Class and that Defendants acted with scienter. *See TSC Indus. v. Northway, Inc.*, 426 U.S. 438 (1976); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).

- 13 -

As set forth in the Burkholz Declaration, Defendants countered the existence of falsity, materiality, scienter, and loss causation and convincingly presented their defenses in their motion to dismiss, in their opposition to class certification, and during settlement discussions. Burkholz Decl., ¶¶64-68. For instance, Defendants steadfastly maintained that Lead Counsel would not be able to prove loss causation because the decline in the price of ADVO common stock was not related to the revelation of any previously withheld information about the Company, but only that Valassis had sued to rescind their proposed merger, on, among other grounds, fraud. Defendants would never concede their liability and would continue to press this and other defenses in motions for summary judgment, and ultimately, at trial.[11]

### c.     Risk as to Damages

Whether Lead Counsel could even prove Lead Plaintiff's estimate of damages was also unsettled. Defendants strenuously disagreed with Lead Plaintiff's damage estimates, claiming that because Lead Plaintiff could not establish loss causation, the Class could not recover damages at the level estimated by Lead Plaintiff's expert. In addition, the damage assessments of the parties' trial experts would be sure to vary substantially, and trial would become a "battle of experts." The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by experts for the Defendants to minimize the Class's losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions. Thus, even if Lead Counsel prevailed as to liability at trial, the judgment obtained could well have been but for a fraction of the damages claimed. Despite these risks, Lead Counsel obtained a $12.5 million cash settlement.

---

[11]     Defendants' defenses would be significantly bolstered by the fact that Valassis ultimately withdrew its fraud allegations against the Company.

### 3.     The Magnitude and Complexity of the Litigation

The complexity of the litigation is another factor examined by courts evaluating the reasonableness of attorneys' fees requested by class counsel.  *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992).  It is widely recognized that shareholder actions are notoriously complex and difficult to prove.  *See Mathes v. Roberts*, 85 F.R.D. 710, 713-14 (S.D.N.Y. 1980); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971).  "[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA."  *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).  *See also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 U.S. Dist. LEXIS 17588, at *33 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.  These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation.").  This Litigation is no different from the cases referenced above.  As described in much greater detail in the accompanying memorandum in support of the Settlement and the Burkholz Declaration, this Litigation involved difficult and complex issues concerning ADVO's financial condition, its newly-released operating system, and merger negotiations between ADVO and Valassis.  Lead Counsel undertook their investigation on a fully contingent basis.  Finishing discovery, including document discovery, depositions and expert discovery, would take a great deal of time, and would have cost hundreds of thousands of additional dollars.

In addition, as set forth in the Burkholz Declaration, the expense and length of the Litigation would have been further exacerbated because Defendants would have undoubtedly filed motions for summary judgment following expert discovery.  Briefing and discovery to resolve those motions would have entailed further substantial expenditure of time and effort.  Assuming Lead Counsel

- 15 -

survived summary judgment, trial preparation would have required many additional hours of work, at great expense. The trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the considerable expenditure of judicial resources. The "normal" cost of litigation, including copying, travel, depositions, computer support services, and other necessary expenses, are quite high. This Litigation was vigorously contested, and Defendants were represented by very experienced and qualified attorneys. *See In re Brown Co. Sec. Litig*., 355 F. Supp. 574, 592-93 (S.D.N.Y. 1973) (standing of opposing counsel underscores complexity of litigation and challenges faced by class counsel). Accordingly, the magnitude and complexity of this securities class action supports the conclusion that the requested fee is reasonable and fair.

### 4.    The Quality of Representation

The quality of the representation by Lead Counsel and the standing of that counsel at the bar are important factors that support the reasonableness of the requested fee. *See Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). It took a great deal of skill to achieve this outstanding Settlement. Lead Counsel are nationally known leaders in the fields of securities class actions and complex litigation. This Settlement represents a highly favorable result for the Class, one that is attributable to the diligence, determination, hard work, and reputation of Lead Counsel, who developed, litigated, and successfully negotiated the settlement of this Litigation, consisting of an immediate and significant cash recovery, without the risk of further litigation. In light of these facts, Lead Counsel's request for 30% of the Settlement Fund is fair and reasonable.

### 5.    Public Policy Considerations

The federal securities laws are remedial in nature, and, to effectuate their purpose of protecting investors, the courts must encourage private lawsuits. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988). The Supreme Court has emphasized that private securities actions such as

this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman*, 472 U.S. at 310 (citation omitted); *Tellabs*, 551 U.S. at 313 (noting that the court "has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions"). *See also Priceline.com*, 2007 U.S. Dist. LEXIS 52538, at *17. Plaintiffs' counsel in these types of cases are typically retained on a contingent basis, largely due to the huge commitment of time and expense required. The typical class representative is unlikely to be able to pursue long and protracted litigation at his or her own expense, particularly with the knowledge that others similarly situated will be able to "free ride" on these efforts at no cost or risk to themselves. Furthermore, the significant expense combined with the high degree of uncertainty of ultimate success means that contingent fees are virtually the only means of recovery in such cases. Indeed, lawyers that pursue private suits such as this on behalf of investors augment the overburdened SEC by "acting as 'private attorneys general.'" *Ressler*, 149 F.R.D. at 657. Thus, "public policy favors the granting of [attorneys'] fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions." *Id.*[12]

---

[12]    *See also Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 U.S. Dist. LEXIS 14888, at *23 (E.D.N.Y. Aug. 7, 1998) (awarding fee of 33-1/3% because it "furthers the public policy of encouraging private lawsuits"); *Chatelain*, 805 F. Supp. at 216 (determining that "an adequate award furthers the public policy of encouraging private lawsuits in pursuance of the remedial federal securities laws"); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 750-51 (S.D.N.Y. 1985) (observing that "[f]air awards in cases such as this encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance"), *aff'd*, 798 F.2d 35 (2d Cir. 1986). As former Chief Judge Brieant observed in *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160 (S.D.N.Y. 1989):

> Enforcement of the federal securities laws should be encouraged in order to carry out the statutory purpose of protecting investors and assuring compliance. A large segment of the public might be denied a remedy for violations of the securities laws

As actionable securities fraud exists and society benefits from strong advocacy on behalf of securities holders, public policy favors the granting of the fee and expense application. *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."); *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *33 (S.D.N.Y. Jan. 31, 2007) ("'the class action mechanism and its associated percentage-of-recovery fee award solve the collective action problem otherwise encountered by which it would not be worthwhile for individual investors to take the time and effort to initiate the action'") (citation omitted).

### D.    The Requested Attorneys' Fees Are Also Reasonable Under the Lodestar Cross-Check

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the district courts may "cross check" the proposed award against counsel's lodestar. *Goldberger*, 209 F.3d at 50. Under the lodestar method, the court must engage in a two-step analysis: first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work. *See, e.g.*, *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973), subsequently refined in *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (*en banc*). "Calculation of the lodestar, however, is simply the beginning of the analysis." *Warner*

---

if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken.

*Id.* at 169.

*Commc'ns*, 618 F. Supp. at 747; *In re Ivan F. Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995). Performing the lodestar cross-check here confirms that the fee requested by Lead Counsel is reasonable and should be approved.

Lead Counsel and their paraprofessionals have spent, in the aggregate, 11,316.08 hours in the prosecution of this case. *See* declarations of Lead Counsel, submitted herewith. The resulting lodestar is $4,430,099.35. A 30% fee, or $3,750,000, is significantly less than the time spent by counsel on the case. Therefore, a 30% fee will result in a "negative multiplier."[13]

In determining whether the rates are reasonable, the Court should take into account the attorneys' legal reputation, experience, and status. As the accompanying declarations of Lead Plaintiff's counsel state, counsel are among the most prominent, experienced and well-regarded securities practitioners in the nation. Therefore, their hourly rates are reasonable here. *See In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *73 (S.D.N.Y. Feb. 1, 2007) (approving counsel's hourly rates).

The multiplier of less than one here obviously falls far below the range of multipliers found reasonable for cross-check purposes by courts in this Circuit and elsewhere. *See, e.g.*, *Doral*, slip op. at 5 (awarding multiplier of 10.26 on $130 million settlement fund); *Maley*, 186 F. Supp. 2d at 371 ("it clearly appears that the modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (approving multiplier of 3.97 and noting that "'[i]n recent years multipliers of between 3 and 4.5 have become common'") (citation omitted); *Kurzweil v. Philip Morris Cos.*, No. 94 Civ. 2373 (MBM), 1999 U.S. Dist. LEXIS 18378,

---

[13]     The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1153 (2d Cir. 1983) (use of current rates appropriate where services were provided within two or three years of application).

at *8 (S.D.N.Y. Nov. 30, 1999) (same); *In re RJR Nabisco, Inc. Sec. Litig.*, No. MDL 818 (MBM), 1992 U.S. Dist. LEXIS 12702, at *22 (S.D.N.Y. Aug. 24, 1992) (approving fees of over $17.7 million, notwithstanding objection that such an award of fees represented a multiplier of 6); *Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (awarding fee resulting in 9.3 multiplier); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n.1 (S.D.N.Y. 1991) (multiplier of 8.74); *Rabin v. Concord Assets Group*, No. 89 CIV 6130 (LBS), 1991 U.S. Dist. LEXIS 18273, at *4 (S.D.N.Y. Dec. 19, 1991) (using multiplier of 4.4); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (multiplier of 5.5); *see also* 1 Alba Conte, *Attorney Fee Awards* §2.06, at 39 (2d ed. 1993) ("When a large common fund has been recovered and the hours are relatively small, some courts reach a reasonable fee determination based on large multiples of 5 or 10 times the lodestar.").

As the court noted in *In re Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119, 131 (N.D. Ill. 1990): "There should be no arbitrary ceiling on multipliers." This is especially true when a lodestar/multiplier is used merely as a cross-check on reasonableness. To find otherwise undermines the principles supporting the percentage approach and encourages needless lodestar building litigation. *See also Ikon*, 194 F.R.D. at 196 ("The court will not reduce the requested award simply for the sake of doing so when every other factor ordinarily considered weighs in favor of approving class counsel's request of thirty percent.").

As discussed above and as detailed in the Burkholz Declaration, Lead Counsel invested substantial time and effort prosecuting this Litigation to a successful completion. The requested fee, therefore, is manifestly reasonable, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

### E.    The Requested Attorneys' Fees Are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method

Regardless of which method a court uses to award attorneys' fees, the award must be reasonable under the circumstances of the particular case. *Goldberger*, 209 F.3d at 47. The fee

- 20 -

requested in this case – 30% of the Settlement Fund – is well within the range of fees awarded by courts in this Circuit, whether considered as a percentage of the fund or as a multiple of lodestar. In selecting an appropriate percentage award, the Supreme Court recognizes that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *Jenkins*, 491 U.S. at 285. If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *Blum v. Stenson*, 465 U.S. 886, 903* (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (concurring).

On a percentage basis, the compensation requested here is well within the range of percentage fee awards within the Second Circuit. *Silverberg v. People's Bank*, 23 Fed. Appx. 46 (2d Cir. 2001) (affirming district court order awarding attorneys' fees and expenses of nearly one-third of settlement fund). Indeed, the requested fee is equal to or below what courts in this Circuit commonly award in common fund cases. *See Priceline.com*, 2007 U.S. Dist. LEXIS 52538, at *16 (awarding 30% of $80 million settlement fund); *In re Tommy Hilfiger Sec. Litig.*, No. 1:04-CV-07678-SAS, slip op. (S.D.N.Y. Oct. 15, 2008) (awarding 25% of $16 million fund); *Stefaniak*, 2008 U.S. Dist. LEXIS 53872, at *10 (awarding 33% of $2.9 million settlement, finding it "typical in class action settlements in the Second Circuit"); *OSI Pharms.*, slip op. at 1 (awarding 30% of $9 million fund); *Veeco*, 2007 U.S. Dist. LEXIS 85554, at *39 (awarding 30% of $5.5 million fund); *In re Acclaim Entm't, Inc. Sec. Litig.*, No. 2:03-CV-1270 (JS) (ETB), slip op. at 9 (E.D.N.Y. Oct. 2, 2007) (awarding 30% of $13.65 million fund); *Taft*, 2007 U.S. Dist. LEXIS 9144, at *35 (awarding 30% of $15.175 million fund); *In re Van Der Moolen Holding N.V. Sec. Litig.*, No. 1:03-CV-8284 (RWS), slip op. at 2 (S.D.N.Y. Dec. 6, 2006) (awarding 33-1/3% of $8 million fund); *Hicks*, 2005 U.S. Dist. LEXIS 24890, at *24, *25 (awarding 30% of $10 million settlement fund, stating a "30%

fee is consistent with fees awarded in comparable class action settlements in the Second Circuit" and does not produce a "windfall"); *Liberty Capital Group, Inc. v. KongZhong Corp.*, No. 1:04-CV-06746-SAS, slip op. at 1 (S.D.N.Y. Apr. 14, 2006) (awarding 30% of $3.5 million settlement fund); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848, at *24 (S.D.N.Y. June 7, 2005) (awarding 33-1/3% of settlement fund); *Eastman Kodak*, 228 F.R.D. at 189 (awarding 40% of settlement fund, and noting that due to the relatively small settlement fund, the requested fee award was necessary to compensate counsel adequately); *In re Warnaco Group, Inc. Sec. Litig.*, No. 00 Civ. 6266 (LMM), 2004 U.S. Dist. LEXIS 13126, at *3 (S.D.N.Y. July 13, 2004) (awarding 30% of $12.85 million settlement); *Maley*, 186 F. Supp. 2d at 374 (awarding 33-1/3% of settlement fund).

##### F.    The Class's Reaction to the Fee Request

To date, the Claims Administrator has sent over 8,700 copies of the Notice to Class Members informing them, *inter alia*, that Lead Counsel intended to apply to the Court for an award of attorneys' fees not to exceed 30% of the Settlement Fund, plus expenses not to exceed $600,000. The time to object to the fee request expires today. To date, not a single objection to the fee and expense request has been received. "[S]uch a low level of objection is a 'rare phenomenon.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (citation omitted). Moreover, "a significant number of investors in the class were 'sophisticated' institutional investors that had considerable financial incentive to object [to the settlement] had they believed [the settlement was unfair or] the requested fees were excessive." *Id*. The fact that no objections have been received is compelling evidence of the fairness of the fee request.

#### V.    LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS ACTION

Lead Counsel also request $515,922.10 in expenses incurred while prosecuting this action. Lead Counsel have submitted separate declarations attesting to the accuracy of these expenses,

505809_1

which are properly recovered by counsel. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable out-of-pocket expenses necessary to the representation of the class). Most of Lead Counsel's expenses were incurred for professional services rendered by Lead Plaintiff's forensic accountants, experts and consultants. The remaining expenses are attributable to the costs of travel, transcription services, computerized research, copying documents and other incidental expenses incurred in the course of litigation. These expenses were critical to Lead Plaintiff's success in achieving the Settlement. *See Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys . . . [and] [f]or this reason, they are properly chargeable to the Settlement fund."). Not a single objection to the expense request has been received. Accordingly, Lead Counsel respectfully request payment for these expenses, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

## VI.    REIMBURSEMENT OF LEAD PLAINTIFF'S TIME AND EXPENSES

Under the PSLRA, the Court may also award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." *See* 15 U.S.C. §78u-4(a)(4). The Estate of Lead Plaintiff Robert Kelleher requests payment of $2,061.20 as reimbursement for his oversight of, and participation in, the Litigation, including reviewing pleadings, preparing for and having his deposition taken, complying with Defendants' discovery request and consulting with Lead Counsel on a regular basis. Burkholz Decl., ¶11. Lead Counsel believe this reimbursement to Lead Plaintiff for his time and expenses incurred during his representation of the Class in the Litigation is both fair and reasonable and warrants the Court's approval.

## VII.    CONCLUSION

Based on the foregoing and the entire record herein, Lead Counsel respectfully request that the Court award attorneys' fees of 30% of the Settlement Fund plus expenses in the amount of $515,922.10, plus interest on both amounts.  In addition, the Estate of Robert Kelleher seeks $2,061.20 for his time and expenses incurred in representing the Class.

DATED:  February 10, 2010                    Respectfully submitted,

                                                                    IZARD NOBEL LLP
                                                                    JEFFREY S. NOBEL (CT 04855)
                                                                    NANCY A. KULESA (CT 25384)
                                                                    29 South Main Street, Suite 215
                                                                    West Hartford, CT  06107
                                                                    Telephone:  860/493-6292
                                                                    860/493-6290 (fax)

                                                                    Liaison Counsel

                                                                    COUGHLIN STOIA GELLER
                                                                      BURKHOLZ & ROBBINS LLP
                                                                    SPENCER A. BURKHOLZ
                                                                    JONAH H. GOLDSTEIN
                                                                    ELLEN GUSIKOFF STEWART
                                                                    ERIC I. NIEHAUS
                                                                    JENNIFER L. GMITRO


                                                                    _____
                                                                         *s/ Ellen Gusikoff Stewart*
                                                                    ELLEN GUSIKOFF STEWART

                                                                    655 West Broadway, Suite 1900
                                                                    San Diego, CA  92101-3301
                                                                    Telephone:  619/231-1058
                                                                    619/231-7423 (fax)

                                                                    Lead Counsel for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 10, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 10, 2010.

*s/ Ellen Gusikoff Stewart*
ELLEN GUSIKOFF STEWART

COUGHLIN STOIA GELLER
          RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:elleng@csgrr.com

CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 10, 2010.

<div style="margin-left:40%">

*s/ Ellen Gusikoff Stewart*
ELLEN GUSIKOFF STEWART

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:elleng@csgrr.com

</div>

# Mailing Information for a Case 3:06-cv-01422-AVC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Spencer A. Burkholz**
  SpenceB@csgrr.com,hectorm@csgrr.com,e_file_sd@csgrr.com

- **Courtland W. Creekmore**
  e_file_sd@csgrr.com

- **Sharleen Joy Davis**
  sharleen.davis@klgates.com

- **David J. Elliott**
  djelliott@daypitney.com,dcharles@daypitney.com

- **Rory FitzPatrick**
  rory.fitzpatrick@klgates.com,joanne.healy@klgates.com

- **Jennifer L. Gmitro**
  JGmitro@csgrr.com

- **Jonah H. Goldstein**
  jonahg@csgrr.com

- **Ellen Gusikoff**
  elleng@csgrr.com

- **Shawn M. Harpen**
  sharpen@mwe.com

- **Helen Harris**
  hharris@daypitney.com

- **Ari J. Hoffman**
  ahoffman@cohenandwolf.com

- **Stuart M. Katz**
  skatz@cohenandwolf.com

- **Nancy A. Kulesa**
  nkulesa@izardnobel.com

- **Eric Landau**
  elandau@mwe.com

- **Elizabeth Leise**
  Elizabeth_Leise@aporter.com

- **John C. Massaro**
  John_Massaro@aporter.com

- **William S. McDermott**
  smcdermott@klng.com

- **David S. Mendelson**
  dm@mendelsonlaw.net,tguellec@hymanlippitt.com

- **Eric I. Niehaus**
  ericn@csgrr.com

- **Kavita Kumar Puri**
  Kavita.Kumar.Puri@aporter.com

- **Scott B. Schreiber**
  Scott_Schreiber@aporter.com

- **Robert Schwartz**
  Robert.Schwartz@aporter.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)